653 A.2d 430

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Ira Stephen SAUL.

Misc. Docket (Subtitle BV)
No. 40, Sept. Term, 1993.

Court of Appeals of Maryland.

Feb. 6, 1995.

Melvin Hirshman, Bar Counsel and Raymond A. Hein, Asst. Bar Counsel, for the Atty. Grievance Com'n of Maryland, petitioner.

Ira Stephen Saul, Fairfax, VA, pro se.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

KARWACKI, Judge.

Before us in this case is the question of what sanction should be imposed upon a member of the Maryland Bar who, in 1994, was suspended from the practice of law in Virginia after being convicted of bank fraud by a federal district court sitting in that state.

## I

For twenty years prior to his suspension, Ira Saul practiced law in Fairfax, Virginia. He was also licensed to practice in

the District of Columbia [1] and in Maryland but did not have an active practice in either of those jurisdictions.

At the end of 1989, Saul was retained by Carter Boehm, a Northern Virginia real estate developer, to handle certain real estate matters relating to a general partnership that owned several hundred acres of land in Spotsylvania County, Virginia. These matters included representation in a condemnation proceeding and drafting restrictive covenants for a subdivision then being developed for the property.

In early 1990, Boehm and others, without Saul's knowledge, conspired to enter into inflated real estate contracts to buy residential building lots. Their plan was to inflate the purchase price of the lots based on an appraisal at the inflated price and to obtain bank financing for 80% of the inflated price from Liberty Savings Bank of Warrenton ("the Bank"). This would result in 100% financing of the sales and leave approximately $7,000.00 free and clear for the seller to kickback to each buyer after closing. As Saul was already doing subdivision work for the property, he agreed to act as settlement agent for the residential sales. Saul, however, had no involvement in the formulation of the fraudulent deals or the real estate contracts that grew out of them, and the kickbacks all occurred outside of Saul's law office without his knowledge.

In March, 1993, Saul, a member of both the Maryland and Virginia Bars, was convicted on four counts of bank fraud in the United States District Court for the Eastern District of Virginia, but was acquitted of any conspiracy.[2] Although the

---

1. We are advised by the parties that disciplinary proceedings have been instituted against Mr. Saul in the District of Columbia and are still pending.

2. Saul was convicted under 18 U.S.C. § 1344 (1993):

   "§ 1344. Bank fraud
   Whoever knowingly executes, or attempts to execute, a scheme or artifice—
   (1) to defraud a financial institution; or
   (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a

applicable federal law permits a sentence of up to thirty years imprisonment, Saul was only sentenced to two years probation and a mandatory special assessment of $200.00. Saul did not appeal from that judgment.

Ira Saul's license to practice law was first suspended in Virginia on August 4, 1993, following his conviction. An extensive show cause hearing was held before a five-member panel of the Virginia State Bar Disciplinary Board. At closing argument, Bar Counsel asked for disbarment, while Respondent's counsel asked for a three-year probationary period *nunc pro tunc* to the August 4, 1993, suspension date, with the balance of the suspension from the September 14, 1994, hearing date being suspended. The Board imposed a five-year suspension *nunc pro tunc* to August 4, 1993, the date on which the automatic suspension had begun.

In October, 1993, we issued a show cause order pursuant to Maryland Rule BV16. With Saul's consent, an order of suspension was entered by us on November 19, 1993. The Attorney Grievance Commission, acting through Bar Counsel, filed a petition for disciplinary action against Saul, alleging violation of Disciplinary Rule 8.4. Pursuant to Md. Rule BV10, we referred the matter to Judge Raymond G. Thieme, Jr., of the Circuit Court for Anne Arundel County to make findings of fact and conclusions of law. After conducting a hearing, Judge Thieme made the following findings and conclusions:

## *"FINDINGS OF FACT*

"1. Ira Stephen Saul ('the Respondent') was admitted as a member of the Bar of the State of Maryland on December 7, 1987.

"2. On June 3, 1993, following a jury trial in the United States District Court for the Eastern District of Virginia,

---

financial institution, by means of false or fraudulent pretenses, representations, or promises;

shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both."

the Respondent was found guilty of four counts of bank fraud, in violation of 18 U.S.C. § 1344, based on his participation in a scheme to defraud Liberty Savings Bank, a federally insured financial institution in Warrenton, Virginia.

"3. On July 26, 1993, the federal court in Virginia denied Respondent's motion for judgment of acquittal, or in the alternative, for a new trial.

"4. On September 3, 1993, the federal court in Virginia entered judgment against the Respondent on the four counts of which he was found guilty. The Respondent was sentenced to a term of two (2) years on probation and ordered to pay a mandatory statutory special assessment in the amount of $200.00.

"4.[3] The Respondent did not appeal the judgment of conviction entered against him, and the time for doing so has expired.

"5. On November 19, 1993, the Respondent was suspended as a member of the Maryland Bar by Order of the Court of Appeals.

"6. On July 20, 1994, at a Hearing before this Court, pursuant to Maryland Rule BV10d the Respondent introduced evidence with regard to mitigation, including but not limited to:

a. Respondent did not profit from the transactions giving rise to his conviction.

b. No loss to Liberty Savings Bank had been established.

c. The trial court found Respondent's role to be *de minimis.*

d. All intent as described in the indictment was embodied in the conspiracy of which Respondent was acquitted.

e. The conduct found to be violative of 18 U.S.C. § 1344 equates to a Class 3 misdemeanor under Virginia law, Code of Virginia, 1950, as amended, § 18.2–203.

---

**3.** Paragraphs appear as numbered in original.

f.  The trial court did not enhance Respondent's sentence for more than minimal planning, or for abuse of a position of trust, or for use of a special skill.

g.  The Respondent successfully practiced law in Virginia for almost 20 years.

### "CONCLUSIONS OF LAW

"1.  Pursuant to Rule BV10(e)1, the final judgment of conviction on four counts of bank fraud entered against the Respondent is conclusive proof of his guilt of those offenses.

"2.  The offenses of which the Respondent has been convicted are criminal acts reflecting adversely on his honesty, trustworthiness or fitness as a lawyer in other respects.

"3.  The offenses of which the Respondent has been convicted reflect that he has engaged in conduct involving dishonesty, fraud, deceit or misrepresentation.

"4.  By his conduct, the Respondent has violated Rules 8.4(a), (b) and (c) of the Maryland Rules of Professional Conduct, as adopted by Rule 1230 of the Maryland Bar."

Saul takes exception to Conclusions of Law number two (2) and three (3), contending that Saul's minimal involvement in the offenses does not reflect upon his honesty, trustworthiness, or fitness as a lawyer.  Further, he points out that he did not profit from the transactions giving rise to his conviction, and that there were no losses incurred by the Bank. Saul asks us to reciprocally discipline him and impose a five year suspension *nunc pro tunc* to August 5, 1993.

### II

Before determining what weight to give the Virginia proceedings, we must examine the attorney grievance process in Virginia and the proceedings there under which Saul was suspended.  The procedures for disciplining attorneys in Virginia are contained in the Rules of the Supreme Court of

Virginia (1994), Pt. 6, § IV, Para. 13.[4]  The Council of the Bar, which has general responsibility for the disciplinary system, appoints District Committees from geographical areas consisting of one or more judicial circuits.  Approximately 22% of each Committee must consist of non-lawyers.  Each Committee is further divided into Subcommittees, appointed by the Chair of the District Committee.  Each District Committee has the authority to "adjudicate and make disposition of Charges of Misconduct filed" by Bar Counsel.  Para. 13(B)(4)(a).  Directly above the District Committees in the chain of authority is the Virginia State Disciplinary Board, which consists of fourteen members appointed by the Chief Justice of the Supreme Court of Virginia.  Two of its members must be non-lawyers.  The Board has authority to consider, *inter alia*, conviction of a crime:

> "(1) Summary Suspension: Whenever the Clerk of the Disciplinary System receives written notification from any court of competent jurisdiction stating that an Attorney has been found guilty of a Crime by verdict of a judge or jury, irrespective of whether sentencing has occurred, the Board shall forthwith enter an order summarily suspending the license of the Attorney and shall forthwith serve upon the Attorney (a) a copy of the written notification from the court, (b) a copy of the Board's order, and (c) a notice fixing the time and place of a hearing to determine whether the license of the Attorney should be revoked or further suspended. . . .

> \*   \*   \*   \*   \*   \*

> "(2) Action By the Board: If the Board shall find at the hearing that the Respondent has been found guilty of a Crime by the verdict of a judge or jury, an order shall be issued and served upon the Respondent in which the Board shall:

---

4. All Paragraph references will be to the Rules of the Supreme Court of Virginia (1994), Pt. 6, § IV, unless otherwise noted.

(a) Suspend, or continue the suspension of, the license of the Respondent for a stated period not in excess of five years; or

(b) Revoke the license of the Respondent."

Para. 13(E). Saul was summarily suspended following his conviction and participated in a hearing before the Board.[5] The parties in this case have stipulated that the following occurred at that hearing:

"Virginia Bar Counsel's case in chief consisted of the introduction of papers relating to Respondent's conviction, received without objection.

"Ira Saul's first witness was Charles Fitzpatrick, Esquire, an attorney with the Office of Thrift Supervision ('OTS') and longstanding acquaintance of the Respondent. Fitzpatrick testified to Ira Saul's outstanding reputation as an attorney in Northern Virginia both at the bar and the bench.

"On a personal level, Fitzpatrick stated that the Respondent has been dedicated to his wife and two children, over the many years of the Fitzpatrick family's friendship with Ira Saul and his family. The Fitzpatrick family has entrusted legal matters to Saul, including a complex real estate matter undertaken by the Respondent on behalf of Charles Fitzpatrick's wife, the Honorable Johanna Fitzpatrick, who currently sits on Virginia's Court of Appeals.

"As an enforcement attorney with the OTS, Charles Fitzpatrick was also qualified as an expert on civil enforcement by the OTS of banking law in connection with federally insured thrifts. Liberty Savings Bank, the institution which is the subject of Respondent's conviction, was at all relevant

---

**5.** It is not clear from the record how Saul's case reached the Board. Under Para. 13, it is possible for proceedings to occur in the first instance before the Board after notice of a conviction, or for Bar Counsel to bring charges before a Subcommittee, a District Committee, or the Circuit Court. The Subcommittee or District Committee may then certify the charges to be heard by the Board. In addition, the aggrieved party may file charges directly in Circuit Court pursuant to Va.Code Ann. § 54.1–3934 (Michie 1994).

times a federally insured thrift and subject to OTS jurisdiction.

"Fitzpatrick testified that he was personally involved in the civil enforcement proceedings arising from the infamous Charles Keating case, including the enforcement proceedings brought against the New York law firm of Kaye, Scholer, Fierman, Hayes & Handler, which resulted in unprecedented civil damages paid by Kay, Scholer to the United States Treasury.

"In Fitzpatrick's opinion, the facts on which Respondent's conviction were based would be too *de minimis* to form the basis for an OTS civil enforcement proceeding.

"Ira Saul's second witness was Jeffrey Rosenfeld, Esquire. Rosenfeld is a Northern Virginia attorney in private practice, for whom Ira Saul first worked, both as a law clerk while in law school and as an associate for two (2) years following graduation from law school. Rosenfeld's acquaintance with the Respondent is of more than 20 years' duration.

"Rosenfeld testified to Ira Saul's outstanding work for Rosenfeld as a clerk and an associate in Rosenfeld's firm. He further testified to his relationship as Respondent's mentor and to Respondent's sterling reputation among the Northern Virginia bar as a prominent and gifted practitioner, who, in Rosenfeld's words, is a 'brilliant' lawyer. Subsequently, during Ira Saul's testimony, letters further attesting to Ira Saul's reputation in the community were received in evidence . . .

"Ira Saul was the third and last witness offered by Respondent. He testified for a number of hours, in response to questions of his counsel, Bar Counsel's cross-examination, and questions propounded by the Board. His testimony covered a wide range of subjects. . . .

\* \* \* \* \* \*

"The last evidence received by the Board at the July 14, 1994 hearing was the rebuttal testimony of the prosecutor in the underlying criminal proceeding, Assistant U.S. Attorney

Stephen Learned, offered by Assistant Bar Counsel Richard Vorhis. Learned testified that he believed in Saul's culpability but concluded his testimony by requesting, *sua sponte*, to be heard in mitigation. Learned stated that Respondent Ira Saul was a good and decent man, that Saul had been punished, and that Learned believed Saul should receive a 'reasonable period of suspension.'

"At this point the testimony was concluded.... On Respondent's request, the evidence was re-opened for the sole purpose of receiving into evidence the order of United States District Judge Claude Hilton releasing Ira Saul from probation after 11 months, which was approximately 13 months prior to the scheduled release date. This order had been entered in early August, 1994, after the show cause hearing but before the closing argument in September."

(Footnotes omitted). The Board did not announce its specific reasons for suspending Saul rather than disbarring him, and the written opinion of the Board has not yet been issued.

### III

■ His conviction, which was the basis for the Virginia disciplinary proceeding, conclusively establishes the fact of Saul's misconduct. We need not, however, apply the same sanction that Virginia applied. The rule is that in cases of reciprocal discipline:

"we look not only to the sanction imposed by the other jurisdiction but to our own cases as well. The sanction will depend on the unique facts and circumstances of each case, but with a view toward consistent dispositions for similar misconduct."

*Attorney Griev. Comm'n v. Parsons,* 310 Md. 132, 142, 527 A.2d 325, 330 (1987). Thus, in *Parsons,* we imposed a 90–day suspension rather than the six-month suspension that had been imposed by the District of Columbia. Although it is undisputed that Saul did engage in misconduct, we must assess for ourselves the propriety of imposing suspension rather than disbarment. *See Attorney Griev. Comm'n v.*

*Newman,* 304 Md. 370, 499 A.2d 479 (1985); *Attorney Griev. Comm'n v. Noren,* 293 Md. 611, 446 A.2d 423 (1982); *Attorney Griev. Comm'n v. Klauber,* 289 Md. 446, 423 A.2d 578 (1981); *Bar Ass'n of Baltimore City v. Siegel,* 275 Md. 521, 340 A.2d 710 (1975); *Maryland State Bar Ass'n v. Agnew,* 271 Md. 543, 318 A.2d 811 (1974).

■ At first glance, the circumstances in this case seem to suggest a sanction of disbarment rather than suspension. *See, e.g., Attorney Griev. Comm'n v. Casalino,* 335 Md. 446, 644 A.2d 43 (1994) (Disbarment of attorney ordered where he was convicted of willfully attempting to evade and defeat federal income taxes in excess of $20,000.00). That sanction will be imposed "unless the lawyer can demonstrate by clear and convincing evidence that compelling extenuating circumstances call for a different result." *Attorney Griev. Comm'n v. Sparrow,* 314 Md. 421, 426, 550 A.2d 1150, 1152 (1988) (citations omitted).

In *Sparrow,* a member of the California and Maryland Bars had been convicted in California of creating sham marriages to defraud the Immigration and Naturalization Service. He had been given a five year suspension in California, but after a period of two years his suspension was stayed, and he was permitted to reapply after meeting several conditions. Official word of the California proceedings did not reach Maryland until almost eight months after Sparrow had been reinstated in California.

Applying the compelling extenuating circumstances test, we determined that:

"where there is no moral turpitude, mitigating factors of lesser magnitude may be considered in determining the appropriate sanction. Sparrow was convicted of crimes of moral turpitude, crimes at least one of which he was found to have committed for personal gain. The mitigating factors he urges upon us do not amount to compelling extenuating circumstances under Maryland law.

"Nevertheless, under the unusual facts of this case, we do not think that disbarment is the proper sanction. . . .

"Evidence produced at the California disciplinary hearing strongly endorsed Sparrow's general competence as a lawyer and integrity as an individual. There were both testimony and letters, and these related to his character and conduct both before and after the criminal episode. As we have seen, this evidence convinced the California Review Department of both mitigating factors and Sparrow's remorse....

"... Sparrow has spent five years unable to practice in California and apparently over six years not practicing law at all. Disbarment now would, in all likelihood, prevent him from practicing in Maryland for another eight to ten years. That sort of cumulative sanction begins to look punitive, rather than cathartic or prophylactic.

"... Under these circumstances, we think an indefinite suspension is appropriate, with leave to apply for reinstatement at the expiration of one year from the date of this order."

*Id.* at 430–32, 550 A.2d at 1154–55 (footnotes omitted).

In the case at bar, there was substantial evidence offered to support Saul's good character and fitness to practice law. Further, unlike Sparrow, Saul did not profit in any way from his misconduct; his downfall was that he was spreading himself too thin and not paying careful enough attention to his practice.[6] In addition, Saul must overcome several hurdles before he can be reinstated in Virginia:

"No license to practice law shall be reinstated for any Attorney whose license was suspended after July 1, 1990 for more than one year unless the Attorney demonstrates to the Board (1) that he or she has attended twelve hours of continuing legal education for every year or fraction thereof

---

6. From late 1989 through mid–1990, Saul was preoccupied with his efforts to bring Major League Baseball to Northern Virginia. He described this effort as "nearly a full-time task." In addition, his real estate development business was troubled, and he had a substantial ownership and management interest in two minor league baseball teams.

that the Attorney's license has been suspended; (2) that the Attorney has taken the Multistate Professional Responsibility Examination since imposition of discipline and received an adjusted score of 75 or higher; and (3) that the Attorney has reimbursed the Bar's Client Protection Fund for any sums of money it may have paid as a result of the Attorney's misconduct."

Para. 13(J). Saul has not only completed the necessary continuing legal education thus far, but has also undertaken a project of great significance to the attorney grievance system in Virginia. The Virginia disciplinary rules currently are not annotated, and disciplinary decisions are issued by many panels. As these decisions are not contained in one source, Saul is in the process of compiling a master index of all attorney grievance opinions in the state for use as annotations.

Had it not been for the delay in notifying Maryland of the out of state proceedings, the attorney in *Sparrow* would have been disbarred. The extenuating circumstances in that case were the fact that Sparrow had already been reinstated in California and that disbarment would be too severe a sanction at that point in time. Saul contends that his circumstances are similar and that if his case had come before us later in time, the facts would be on point.

Saul did not profit from his misconduct, and the Bank which was the subject of his prosecution did not suffer any losses. In addition, Saul did not *actively* participate in defrauding the Bank. The Virginia Board conducted an extensive hearing after which it found that suspension, rather than disbarment, was the appropriate sanction. The Board was obviously convinced that there were mitigating factors present in this case. In light of the unusual circumstances in this case, the extensive nature of the Virginia proceedings, Saul's minimal involvement in the bank fraud, and the additional requirements he must meet for readmission in Virginia, we will give deference to the determination of the Virginia Board and impose an indefinite suspension with the right to reapply after reinstatement to the Virginia Bar.

*IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COURT COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF TRANSCRIPTS, PURSUANT TO MARYLAND RULE BV15 c FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST IRA S. SAUL.*

CHASANOW, J., concurs in the result only.