744 A.2d 35

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Bruce C. BEREANO.

Misc. AG No. 11, Sept. Term, 1999.

Court of Appeals of Maryland.

Jan. 13, 2000.

Melvin Hirshman, Bar Counsel, and Kendall R. Calhoun, Asst. Bar Counsel, for Attorney Grievance Com'n of Maryland.

Bruce C. Bereano, Annapolis, for Respondent.

Argued before RODOWSKY, HARRELL, ROBERT L. KARWACKI, (retired, specially assigned), WILLIAM W. WENNER, (specially assigned), ARRIE W. DAVIS, (specially assigned,) JAMES R. EYLER, (specially assigned), and RAYMOND G. THIEME, Jr. (specially assigned), JJ.

RODOWSKY, Judge.

Bruce C. Bereano (Bereano), a member of the bar of this Court since 1969, was convicted in the United States District Court for the District of Maryland in November 1994 on seven counts of mail fraud, in violation of 18 U.S.C. §§ 1341 and 1346. In August 1998, the United States Court of Appeals for the Fourth Circuit (the Fourth Circuit) in an unpublished opinion upheld the finding of guilt but remanded for resentencing. *See United States v. Bereano,* 161 F.3d 3 (4th Cir.1998) (table decision). A few months later, the District of Columbia Court of Appeals disbarred Bereano on the ground that mail fraud is a "crime involving moral turpitude *per se."* *In re Bereano,* 719 A.2d 98, 99 (D.C.1998) (per curiam). The United States Supreme Court then disbarred Bereano on January 25, 1999. *In re Bereano,* 525 U.S. 1119, 119 S.Ct. 921, 142 L.Ed.2d 917 (1999) (mem.). In May 1999, that Court

also denied Bereano's petition for a writ of certiorari to review his conviction. *See Bereano v. United States*, 525 U.S. 1119, 119 S.Ct. 1802, 143 L.Ed.2d 1007 (1999) (mem.).

Bereano's conviction having become final, the Attorney Grievance Commission, through Bar Counsel, petitioned this Court for disciplinary action against Bereano, alleging that he had violated the Maryland Rules of Professional Conduct (RPC), Rule 8.4(a), (b), (c), and (d).[1] The petition was referred for hearing to Judge Eugene M. Lerner of the Circuit Court for Anne Arundel County. In findings and conclusions issued on September 23, 1999, Judge Lerner determined that Bereano had violated subsections (a), (b), (c), and (d) of RPC 8.4, and, in his report to this Court, Judge Lerner added a recommendation for "a sanction less than disbarment." In this Court Bar Counsel recommends that Bereano be disbarred. Bereano took no exceptions to Judge Lerner's findings. In this Court he requests "a suspension of limited duration for a set time period so that [he] can return to the practice of Law."

In our review to determine an appropriate sanction, we accept as facts the allegations of the counts of the federal indictment on which Bereano was convicted, as well as the evidence set forth in the Fourth Circuit's opinion to demonstrate that there was sufficient evidence to support the convictions. *See* Maryland Rule 16–710(e)(1) ("[A] final judgment by a judicial tribunal in another proceeding convicting an attorney of a crime shall be conclusive proof of the guilt of the attorney of that crime.").

---

1. RPC 8.4 reads in relevant part:

"It is professional misconduct for a lawyer to:

"(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

"(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

"(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; [and]

"(d) engage in conduct that is prejudicial to the administration of justice[.]"

## I

Bereano is a former clerk for a federal district court judge in Virginia and a former counsel to the Maryland Senate. He has taught law as an adjunct faculty member. For more than twenty years he has engaged in legislative lobbying before the Maryland General Assembly and in the private practice of law. Prior to the instant matter Bereano never has been the subject of professional discipline in any form.

The federal indictment alleged that, from May 1990 until June 1991, Bereano "knowingly and willfully devise[d] and intend[ed] to devise a scheme and artifice to defraud" his lobbying clients of money by false pretenses, in violation of 18 U.S.C. § 1341, and to deprive them of their right to his "loyal, faithful, honest, and unbiased service[s]," in violation of 18 U.S.C. § 1346.[2] The Government alleged that Bereano devised the mail fraud scheme in order to "conceal the true identities of the actual contributors of campaign funds," and to "make political contributions in excess of the limitations imposed by Maryland state election law."[3] Bereano would

---

**2.** 18 U.S.C. § 1341 (1994) provides in pertinent part:
   "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, ... [and] for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, ... shall be fined under this title or imprisoned not more than five years, or both."
   18 U.S.C. § 1346 (1994) provides: "For the purposes of this chapter, the term 'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of honest services."

**3.** Maryland Code (1957, 1990 Repl.Vol.), Art. 33, § 26–9(d) and (e)(3), in relevant part provided:
   "(d) *Limit of contributions.*—It is unlawful for any individual, association, unincorporated association, corporation, or any other entity either directly or indirectly, to contribute any money or thing of value greater than $1,000 to any candidate ... in any primary, general or special election. Total contributions by a contributor under this subsection shall not exceed $2,500 in any primary or general election.
   "(e)(3) No transfer of any kind, in any amount, is permitted if it is intended to conceal the true identity of the actual contributor or the identity of the intended recipient."

request employees of his law firm to make political contributions in their own names to candidates, and then he would reimburse these employees with checks drawn on the law firm's operating account. In addition Bereano would have his employees cash checks drawn on the law firm's operating account and made payable to them, and then return the cash to him. Bereano would transfer this cash to members of his family, who would use it to make contributions in their names to Bereano's political action committee. The checks drawn on the law firm's account bore false notations describing the funds as reimbursements for expenses unrelated to political contributions. Bereano caused these checks to be recorded as a disbursement for, among other things, "legislative entertainment." In addition to Bereano's fee for services, his lobbying clients had agreed to pay reasonable expenses, including, specifically, "legislative entertainment," but, as representatives from these clients testified at the federal trial, Bereano was not authorized to make political contributions on their behalf or to bill his lobbying clients for political contributions made by him.

Each count of the indictment concluded that Bereano mailed his lobbying clients bills that "fraudulently includ[ed] ... the amounts of the repayment checks used to reimburse the employees and family members for political contributions, which were falsely billed to clients as ... legislative entertainment." There were eight counts, each alleging a specific mailing to or from four different clients.[4] The total amount of

By Chapter 617 of the Acts of 1991, effective July 1, 1991, Article 33, § 26–9(d) was amended to allow contributions in the amount of $4,000, with a limit on total contributions of $10,000 in any four-year election cycle.

In 1985 the Attorney General of Maryland had ruled that "[a] contribution that is received by a political committee and later transferred to a candidate can readily be regarded as an 'indirect' contribution from the original contributor to the candidate via the committee," so that the same limits applied to such contributions. *See* 70 Op. Att'y Gen. 96, 98 (1985).

**4.** After the jury had found Bereano guilty on all eight counts, the court granted a defense motion for a judgment of acquittal on one count.

fraud alleged was "approximately $16,000." The Fourth Circuit summarized the scheme as "Bereano's fraudulent transfer to his clients of his cost of doing business which cost took the form of political contributions."

Before trial, the district court granted the Government's motion to limit the use of evidence concerning Maryland state election laws to Bereano's knowledge and intent, as distinct from the substantive issue of whether Bereano violated those laws. The Fourth Circuit agreed that "a violation of Mary-. land state election laws [is] both unnecessary and insufficient to prove mail fraud violations." Because Bereano's conviction for mail fraud does not determine, one way or the other, whether he violated Maryland's election laws, this Court, in determining an appropriate sanction, considers only Bereano's mail fraud conviction and the misconduct underlying it.

Under the United States Sentencing Guidelines (1995) (USSG), the federal district court was required to determine the "value of the money, property, or services unlawfully taken." USSG § 2F1.1, cmt. (n.7). That court found that the Government failed to establish losses of $16,000, and, instead, that the losses established were $600. They consisted of four separate $150 amounts respectively billed by Bereano to four lobbying clients for "legislative entertainment," whereas the amounts billed in fact represented reimbursement for political contributions made indirectly by Bereano and paid for by his clients through the fraud scheme. The amount of the loss is discussed more fully in Part III, *infra.*

Prior to sentencing, numerous individuals sent letters on behalf of Bereano to the federal district judge, which he characterized as follows:

> "[T]he writers of those letters are a very diverse group of people. They are legislators, they are lawyers, they are law enforcement people, they are CEOs, executives at all levels. There are mayors, county executives, former governors, liberals, conservatives, black, white, men, women.

"... In a sense, it can be said that [these letters] repre-
sent a lobbying effort. Of course, that is not particularly a
plus, but they also indicate that a lot of people see and have
seen a lot of good in Mr. Bereano."

At sentencing the trial court also distinguished Bereano's case
from more typical mail fraud, saying:

"The fraud here was not perpetrated for direct monetary
gain to the detriment of the clients involved. The intent
was clearly a mutual enhancement of the lobbying position
of both the clients and the defendant. But for the defen-
dant's concerns over the application of the Maryland elec-
tion laws and their limitations, I am convinced by a prepon-
derance of the evidence that the defendant would have
openly solicited the so-called victim clients for contributions
to political fundraisers, and if appropriate would have la-
beled expenses in that category as such on his bills. There
is, I think, clearly an arguable gain to the clients from the
fraudulent expenditures as part and parcel of the total
efforts that were put forth by Mr. Bereano in their behalf.
The beneficiaries of the money were clearly the legislative
candidates and not the defendant. And thus, as I have
indicated earlier, there is no quantifiable loss to the victims,
as is customary in a fraud case.... [T]hat explains, I
believe, the testimony of the representatives of the victim
entities that they didn't recognize any fraud or any loss, and
I think it explains the letters that have been received...."

Bereano was sentenced to a five year term of probation, six
months of which were to be served in community confinement,
500 hours of community service, and a fine of $20,000. The
district court stayed execution of the sentence pending ap-
peal.[5]

---

5. In order to stay execution of the sentence pending appeal, it was
necessary for the sentencing court to make the findings required by 18
U.S.C. § 3143(b)(1) (1994), including a finding

   "(B) that the appeal is not for the purpose of delay and raises a
   substantial question of law or fact likely to result in—
   "(i) reversal,
   "(ii) an order for a new trial,

On appeal from his conviction, Bereano argued, *inter alia,* that the Government had failed to prove harm to the alleged victims, and that harm is a necessary element for a conviction under 18 U.S.C. § 1341. The Fourth Circuit rejected this argument on factual grounds. It noted that, although the federal circuits are divided on the legal issue,

> "contemplated harm is present in this case. The contemplated harm is Bereano's fraudulent transfer to his clients of his cost of doing business which cost took the form of political contributions....

> "... The perception of the victim or target of the scheme is ultimately irrelevant to whether Bereano devised a scheme, or acted with the requisite intent to defraud. *See United States v. Brien,* 617 F.2d 299, 311 (1st Cir.) ('If a scheme to defraud has been or is intended to be devised, it makes no difference whether the persons the schemers intended to defraud are gullible or skeptical, dull or bright. These are criminal statutes, not tort concepts. The only issue is whether there is a plan, scheme or artifice intended to defraud.'), *cert. denied,* 446 U.S., 919[, 100 S.Ct. 1854, 64 L.Ed.2d 273] (1980)....

> "Further, while his clients argue that they were satisfied with Bereano's services, they also testified that they did not authorize and would not have knowingly paid for the political contributions Bereano made. In support of this testimony, the clients' retainer agreements ... do not authorize Bereano to make political contributions, nor did the clients authorize such expenses by any other means.

---

"(iii) a sentence that does not include a term of imprisonment, or

"(iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process."

Thereafter, the Attorney Grievance Commission petitioned this Court, pursuant to former Rule BV 16, for the immediate interim suspension of Bereano from the practice of law, pending his appeal. That petition of the Attorney Grievance Commission was denied. *Attorney Grievance Comm'n v. Bereano,* 338 Md. 480, 659 A.2d 874 (1995).

"Sending a false bill to a third party through the mails with the necessary criminal intent is a classic violation of the mail fraud statute."

(Citations omitted). The Fourth Circuit affirmed as to guilt, but remanded for upward revision of the sentence.[6]

At the hearing before Judge Lerner, in order to establish a violation of RPC 8.4 Bar Counsel placed in evidence the judgment of conviction, the unpublished opinion of the Fourth Circuit, and the order of the District of Columbia Court of Appeals disbarring Bereano. For his part, Bereano stated, "I very respectfully acknowledge the conviction. I accept the conviction.... [T]here will be no effort ... to relitigate this matter." Nevertheless, Bereano again elicited testimony from representatives of the defrauded clients that they did not believe that he had billed them fraudulently. At that hearing Bereano called almost forty witnesses who testified to his good character, including a United States Congressman, a former governor, judges, and individual clients. Judge Lerner summarized this testimony as presenting

"the common theme that [Bereano] is trustworthy, honest, ethical, charitable, has done nothing prejudicial to the administration of justice, is an excellent attorney, tenacious, conscientious, hard working, with long hours, has great energy, zeal, and enthusiasm, helps people, has built an excellent reputation as a person and a lawyer."

On the basis of the mail fraud conviction, Judge Lerner found violations of RPC 8.4(a), (b), (c), and (d), and he included a recommendation against disbarment.[7] Judge Lerner's recommendation is not a finding of fact that would be

---

**6.** The Fourth Circuit held that the sentencing court had abused its discretion in departing downward from the sentencing guidelines. The sentence imposed upon Bereano on remand was five months of community confinement, followed by five months of home confinement, and a $30,000 fine.

**7.** The recommendation that Judge Lerner included in his report reads:

"Having considered all of the evidence, this Member of the Court believes that [Bereano] has performed many beneficial acts for the citizens of the community, which should be balanced against the

entitled to deference unless clearly erroneous. This Court's jurisdiction over disciplinary proceedings is "original and complete," *Maryland State Bar Ass'n v. Agnew*, 271 Md. 543, 553, 318 A.2d 811, 817 (1974), and the responsibility for determining the appropriate sanction for misconduct falls exclusively upon this Court.

## II

Under standards promulgated by the American Bar Association, absent mitigating circumstances, disbarment is the usual sanction for an attorney convicted of a crime of which a necessary element is fraud. *See* ABA, Standards for Imposing Lawyer Sanctions § 5.11(b) (1991 ed.). The crime of mail fraud has two elements: "(1) a scheme to defraud, and (2) the mailing of a letter, etc., for the purposes of executing the scheme." *Pereira v. United States*, 347 U.S. 1, 8, 74 S.Ct. 358, 362, 98 L.Ed. 435, 444 (1954). The Government is required to prove that the defendant intended to defraud the victim. *See, e.g., United States v. Cooper*, 132 F.3d 1400, 1405 (11th Cir.1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 806, 142 L.Ed.2d 666 (1999); *United States v. Manzer*, 69 F.3d 222, 226 (8th Cir.1995); *United States v. Peters*, 962 F.2d 1410, 1414 (9th Cir.1992). The Fourth Circuit held in *United States v. Bereano* that these elements had been established on sufficient evidence.

Prior attorney discipline cases in this Court involving lawyers who had been convicted of mail fraud or similar crimes have established the standard for determining the

---

violation of the Rules of Professional Conduct and the serious error in judgment on [Bereano's] part. While the minor degree of the harm to the victims may not be considered in the criminal case, it certainly may be considered by the Court of Appeals in establishing the appropriate sanctions. It is [my] belief that [Bereano] has suffered greatly, and has learned much throughout this ordeal.

"It is not contemplated by this Court that [Bereano] will ever engage in this type of activity in the future. In fact, [Bereano] has successfully, ethically, and prudently practiced law since his conviction until the present. Therefore, it is the recommendation of this Court that [Bereano] receive a sanction less than disbarment."

appropriate sanction for those violations of professional ethics. As stated in *Attorney Grievance Commission v. Newman,* 304 Md. 370, 499 A.2d 479 (1985), a case where the attorney was convicted of mail fraud, "We have consistently adhered to the view that when a member of the Bar is shown to be willfully dishonest for personal gain by means of fraud, deceit, cheating or like conduct, absent the most compelling extenuating circumstances, . . . disbarment follow[s] as a matter of course." *Id.* at 378, 499 A.2d at 483.

Mail fraud was involved in *Attorney Grievance Commission v. Pine,* 291 Md. 319, 435 A.2d 419 (1981). It consisted of "procuring a false lost wage letter which was submitted to insurance companies as a part of the claim concocting a false statement of [the client] that he had no prior back problems, when in fact he did, and the exaggeration of the nature and extent of the injuries actually suffered." *Id.* at 320–21, 435 A.2d at 420 (internal quotation marks omitted). Pine argued that, because he withdrew from the scheme before becoming aware of the official investigation into his activities, he should not be disbarred. We noted that fraud was an essential element of the crime. *Id.* at 323, 435 A.2d at 421. Stating the rule that convictions for such crimes result in disbarment "in the absence of compelling circumstances justifying a lesser sanction," we held that Pine's withdrawal from the fraudulent scheme, "although commendable from the standpoint of showing some repentance, did not prevent his conviction of mail fraud." *Id.* at 324, 435 A.2d at 422. This Court disbarred Pine.

*Attorney Grievance Commission v. Mandel,* 294 Md. 560, 451 A.2d 910 (1982), involved the conviction of a Governor of Maryland under the mail fraud statute. We stated that "fraud was the very essence of the charge under which Mandel was convicted." *Id.* at 585, 451 A.2d at 922. There were no "compelling circumstances" to justify a sanction less than disbarment, despite "the fact that Mandel has already been suspended from the practice of law for almost five years and that [he has suffered] the mental anguish of the prosecution, of the tortuous appellate process and of imprisonment," be-

cause these circumstances did not exist at the time that he engaged in the underlying misconduct. *Id.* at 588, 451 A.2d at 923–24. This Court disbarred Mandel.[8]

The lawyer in *Newman*, 304 Md. 370, 499 A.2d 479, was employed as a senior claims supervisor by an insurance company. He issued drafts to an investigator who either performed no work or inflated the amounts for services that he did perform; the investigator then kicked back a portion of the payments to Newman. Following his conviction for mail fraud, this Court disbarred Newman.

Moreover, although it sometimes is difficult to compare attorney discipline cases from out-of-state courts,[9] other courts

---

**8.** Subsequent to Mandel's conviction and disbarment, the United States Supreme Court held that the mail fraud statute was "limited in scope to the protection of property rights," and did not extend to the protection of intangible rights, as inferior federal courts previously had held. *See McNally v. United States*, 483 U.S. 350, 360, 107 S.Ct. 2875, 2882, 97 L.Ed.2d 292, 302 (1987). After this decision, Mandel filed a writ of error *coram nobis* in the United States District Court for the District of Maryland, seeking to vacate the judgment of conviction in his case, which had been based on the intangible rights doctrine rejected in *McNally*. That writ was granted. *See United States v. Mandel*, 672 F.Supp. 864, 878 (D.Md.1987), *aff'd*, 862 F.2d 1067 (4th Cir.1988), *cert. denied*, 491 U.S. 906, 109 S.Ct. 3190, 105 L.Ed.2d 699 (1989). His conviction having been vacated, Mandel was readmitted to the bar of this Court.

Congress enacted present 18 U.S.C. § 1346 after *McNally*. *See United States v. Grubb*, 11 F.3d 426, 435 & n. 13 (4th Cir.1993) ("After the Supreme Court held in *McNally v. United States* that such schemes [involving public officials who deprived citizens of their right to honest services] could not be prosecuted under section 1341, Congress expanded the definition of fraud [in section 1346] to include them, effective November 18, 1988." (citation omitted)).

**9.** Some jurisdictions, unlike Maryland, still abide by the moral turpitude per se rule. *See, e.g., In re Zimmer*, 637 A.2d 103, 103–04 (D.C.1994) (per curiam) (disbarring attorney convicted of aiding and abetting the misapplication of bank funds, and mail fraud, because the latter offense involves moral turpitude per se). By contrast, New York automatically disbars attorneys convicted of mail fraud, a federal felony, but only if their misconduct also would constitute a state law felony. *See, e.g., In re Hochberg*, 259 A.D.2d 94, 690 N.Y.S.2d 555, 557–58 (1999) (per curiam) (refusing automatically to disbar insurance adjuster who submitted two falsely inflated claims and committed tax evasion

also routinely disbar attorneys convicted of mail fraud.[10] Fi-

because the amount of his profit was unclear, and under state law automatic disbarment requires that the amount of the profit exceed the minimum for a state felony). In addition, attorneys convicted of mail fraud often have been convicted of other offenses of which Bercano has not been convicted. *See, e.g., In re Juron*, 179 A.D.2d 218, 582 N.Y.S.2d 32, 33 (1992) (per curiam) (disbarring attorney for his conviction of "the crimes of conspiracy to defraud a 'savings and loan,' defrauding a 'savings and loan,' and mail fraud").

**10.** *See, e.g., In re Smith*, 164 Ariz. 526, 794 P.2d 601, 604–05 (1990) (in banc) (disbarring attorney convicted of aiding and abetting both a mail fraud and a sale of an unlicensed security, whose conduct involved "allow[ing] letters containing false information to influence public investors," because this conduct "adversely reflects on his fitness to practice law and demonstrates a disregard for the duty owed to the public and the legal system"); *In re Utz*, 48 Cal.3d 468, 256 Cal.Rptr. 561, 769 P.2d 417, 425–27 (1989) (in bank) (per curiam) (disbarring former deputy attorney general who was a silent partner in a scheme to defraud investors, and who "played 'fast and loose' with his position . . . to assist the land fraud scheme" because the "jury was required to find that [he] had the intent to defraud," and because he was "unwilling[ ] to acknowledge the serious nature of his misconduct"); *In re Duker*, 723 A.2d 410, 411 (D.C.1999) (per curiam) (disbarring attorney, in an unopposed case, for his conviction of mail fraud and related charges because mail fraud involves "moral turpitude *per se* "); *In re Schneider*, 707 So.2d 38, 39–40 (La.1998) (per curiam) (disbarring attorney who committed mail fraud and submitted false statements to a federally insured bank in the course of her work for a real estate company that "transfer[red] its clients' money from an escrow account to an operating account," resulting in $3 million loss to creditors, despite the fact that she did not take "an active part" in the criminal scheme, and her asserted mitigation that her conviction was "unrelated to the practice of law . . . and in no way involved harm to clients"); *In re Goldberg*, 142 N.J. 557, 666 A.2d 529, 530–34 (1995) (per curiam) (disbarring attorney who, while managing underwriting firm, issued checks with false notations that were in fact a bribe intended to secure underwriting of bonds for a housing development in Guam, and a false bill concealing attorney's borrowing from trust fund for this project); *In re Glaser*, 259 A.D.2d 37, 692 N.Y.S.2d 434, 435 (1999) (per curiam) (disbarring attorney convicted of single count of conspiracy to commit mail fraud because he "knowingly permitt[ed] a representative to submit an inflated insurance claim on behalf of his company and . . . accept[ed] the insurance proceeds," despite mitigating factor of "absence of personal benefit"); *Office of Disciplinary Counsel v. Sweeney*, 84 Ohio St.3d 388, 704 N.E.2d 248, 249 (1999) (per curiam) (disbarring attorney who "defraud[ed] four insurance companies by settling claims in the total amount of $92,839 based on false medical records that he had created" and who had failed to make restitution as ordered by a federal court); *Committee on Legal Ethics v. Gorrell*, 185 W.Va. 419,

nally, outside of the mail fraud context, this Court has indicated that, absent compelling extenuating circumstances, it will disbar attorneys for conduct involving fraud. *See Attorney Grievance Comm'n v. Sabghir,* 350 Md. 67, 84, 710 A.2d 926, 934–35 (1998) (misappropriation involving fraud, deceit, and dishonesty).

Bereano argues, however, that all of our decisions disbarring attorneys convicted of mail fraud antedate 1987 and no longer have precedential value because

"[p]rior to 1987 ... mail fraud was considered an offense involving 'moral turpitude.'

"However, 'moral turpitude ceased to be an enumerated factor in disciplinary proceedings upon replacement of the former Maryland Code of Professional Responsibility with the Maryland Rules of Professional Conduct on January 1, 1987' and is now irrelevant. *Attorney Grievance Commission v. Casalino,* 335 Md. 446[, 451, 644 A.2d 43, 45] (1994).

"There do not appear to be any post 1987 mail fraud disciplinary cases of this Court based on mail fraud *convictions.*"

Respondent's Memorandum at 21 (citations omitted). It is correct that the Rules of Professional Conduct no longer use moral turpitude as a standard. It does not follow, however, that cases prior to 1987 shed no light on whether the misconduct underlying mail fraud violates, for example, RPC 8.4(c)'s prohibition against "engag[ing] in conduct involving dishonesty, fraud, deceit or misrepresentation." In *Casalino,* 335 Md. 446, 644 A.2d 43 (1994), we said:

"The fact that 'crime of moral turpitude' was removed as a factor in disciplinary proceedings does not mean that there now is no such thing as a crime of moral turpitude.... The only difference under present Rule 8.4 of the Rules of Professional Conduct is that a crime's status as one of moral

---

407 S.E.2d 923, 924–25 (1991) (per curiam) (disbarring an attorney convicted of eleven counts of mail fraud in a "scheme to siphon money from [his] law partnership" because "mail fraud is a crime involving moral turpitude").

turpitude is irrelevant to whether a lawyer has been guilty of the misconduct proscribed by that rule. Under the current rule, a lawyer's commission of a crime or conduct enumerated in Rule 8.4 will subject that lawyer to discipline irrespective of whether the crime is *also* one of moral turpitude."

*Id.* at 451, 644 A.2d at 45 (emphasis added).

Bereano also attempts to cast doubt on this Court's previous cases on mail fraud by arguing that they never involved convictions of a private individual under 18 U.S.C. § 1346, which provides that "the term 'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of honest services." The respondent submits that the United States Supreme Court has never considered whether this section applies to private individuals, as distinct from governmental officials, and that some United States Courts of Appeals have required a violation of a state law or of an independent federal law as a predicate for a conviction under § 1346. From this Bereano seems to draw the conclusion that one of the theories underlying the indictment, *i.e.*, 18 U.S.C. § 1346, is a questionable basis for the imposition of disbarment.

As a matter of federal criminal law and procedure, Bereano's argument was rejected by the Fourth Circuit. The argument is similar to one advanced in *Attorney Grievance Commission v. Pine*, 291 Md. 319, 435 A.2d 419. In that case an attorney who had been convicted of mail fraud argued that he "could [not] have been convicted of false pretenses in a Maryland Court under the facts proven in his federal prosecution" because he had withdrawn from the fraudulent scheme. *Id.* at 322, 435 A.2d at 421 (internal quotation marks omitted). We rejected that argument by citing former Rule BV10(e)(1), the identical terms of which are now found in Maryland Rule 16–710(e)(1) ("[A] final judgment by a judicial tribunal in another proceeding convicting an attorney of a crime shall be conclusive proof of the guilt of the attorney of that crime."). Similarly, the absence of a violation of a state law or of a federal law, other than mail fraud, is irrelevant because Ber-

eano's conviction is conclusive proof that he engaged in a scheme to defraud and that he possessed the intent to defraud.

In any event, Bereano also was convicted of violating 18 U.S.C. § 1341. As the Fourth Circuit noted, "the evidence was sufficient to convict Bereano of § 1341 mail fraud violations" because "contemplated harm is present in this case." Bereano's assertion that previous Maryland cases on mail fraud do not apply here is unavailing.

Accordingly, the only issue in the instant case is whether Bereano has demonstrated compelling extenuating circumstances that would warrant a sanction less than disbarment.

### III

Bereano points to a number of factors that, in his view, sufficiently mitigate his misconduct to make disbarment inappropriate. These factors fall into two general categories, the degree of magnitude of the crime and the respondent's past history. Under the former category Bereano's argument presents a number of recurring themes that we now undertake specifically to identify and address.

Bereano attempts to minimize his federal mail fraud conviction by analogizing it to a misdemeanor under state law. Focusing on the 18 U.S.C. § 1346 theory of the Government's case, Bereano submits that he was "in reality" prosecuted and convicted for a violation of state election laws, but that the Government never charged or proved state law violations. This argument ignores the fact that, in the federal criminal trial, Maryland election laws were used only to demonstrate motive and intent, and the fact that Bereano stands convicted of the federal offense.

A theme emphasized in Bereano's argument is the testimony by his lobbying clients that they did not consider themselves to have been defrauded. In response to a similar argument made to it, the Fourth Circuit said that "while his clients argue that they were satisfied with Bereano's services, they also testified that they did not authorize and would not

have knowingly paid for the political contributions Bereano made." This Court has looked to the nature of mail fraud when responding to an argument somewhat similar to that advanced here by Bereano. *See Attorney Grievance Comm'n v. Reamer,* 281 Md. 323, 379 A.2d 171 (1977). *Reamer* was an interim suspension case involving a lawyer who had been convicted of using the mails to defraud insurers in the settlement of personal injury claims. There, to determine Reamer's intent, we looked to the instructions under which the federal jury had convicted him. The jurors were told:

> "[T]he question here is not whether somebody in fact has been defrauded; it is not whether the defendant has profited by some transaction or whether someone else was injured thereby. But did the defendant ... intend to defraud. If he intended to defraud by a plan or scheme, it is not important whether he accomplished it or not."

*Id.* at 328, 379 A.2d at 175 (internal quotation marks omitted) (alteration in original).

Bereano says that he had no motive of personal gain. He cites *Attorney Grievance Commission v. Saul,* 337 Md. 258, 653 A.2d 430 (1995), arguing that a sanction less than disbarment is appropriate for fraud convictions when there was a lack of intent. He also asserts that lack of personal gain involved in an act of misconduct may in some circumstances influence the sanction to be imposed, citing *Attorney Grievance Commission v. Kahn,* 290 Md. 654, 431 A.2d 1336 (1981).

*Saul* was a reciprocal discipline case involving a Virginia attorney who was suspended for five years in that state on account of his conviction for bank fraud. We suspended Saul indefinitely, with the right to reapply in Maryland after his readmission in Virginia. This Court deferred to Virginia's decision to suspend, in part because " '[a]ll intent [to commit fraud] as described in the indictment was embodied in the conspiracy of which [the attorney] was acquitted,' " because "Saul did not profit from his misconduct," and because "Saul did not *actively* participate in defrauding the Bank." *Saul,* 337 Md. at 262, 270, 653 A.2d at 432, 435. By contrast, the

indictment of Bereano alleged that he "did knowingly and willfully devise and intend to devise a scheme" to defraud. Having been convicted on seven counts of an indictment alleging such intent, Bereano cannot now argue that he lacked it.

Further, although "lack of personal gain involved in an act of misconduct may in some circumstances influence the sanction to be imposed," *Kahn,* 290 Md. at 680, 431 A.2d at 1350, Bereano's misconduct evidently did involve personal gain. Bereano relies on the statement of the sentencing judge, that "[t]he fraud here was not perpetrated for direct monetary gain to the detriment of the clients involved." The key word is "direct." Immediately following the statement quoted, that judge said, "The intent was clearly a mutual enhancement of the lobbying position of both the clients *and the defendant.*" (Emphasis added). If one looks at the scheme from the standpoint of the enhancement of Bereano's position as a lobbyist, he realized indirect personal gain. If one looks at the scheme from the standpoint of the Fourth Circuit's characterization of the misconduct, namely that Bereano engaged in a "fraudulent transfer to his clients of his cost of doing business which cost took the form of political contributions," then Bereano realized direct personal gain as well.

Bereano characterizes the mail fraud prosecution as "nothing more than four one-hundred and fifty dollar breach of contract cases in which all parties to the contract said [that] there was no breach or harm." He submits that the amount of the loss "for the purpose of determining the 'magnitude and nature' of the crime is $0.00," or "[i]n any event . . . no more than $600."

In this context, Bereano cites *Attorney Grievance Commission v. Gittens,* 346 Md. 316, 697 A.2d 83 (1997), arguing that "[e]ven where the amount of a mail fraud scheme was . . . $88,379.92 (over 147 times the amount in controversy regarding Bruce C. Bereano) this Court did not choose disbarment." *Gittens* involved an attorney whom the District of Columbia Court of Appeals suspended following his conviction for "first

degree theft against a person sixty or older." *Id.* at 320, 697 A.2d at 85 (internal quotation marks omitted). The attorney pled guilty to this count of a federal indictment that also included counts for mail fraud, which were dropped pursuant to a plea agreement. The circuit court judge to whom this Court referred the Maryland disciplinary petition found addiction to cocaine as a cause for the misconduct and that, "[a]fter depleting most of his personal assets in order to purchase cocaine to satisfy his addiction, [Gittens] began to withdraw money from his attorney's escrow account in order to purchase cocaine." *Id.* (internal quotation marks omitted). This Court, determining it appropriate to defer to the District of Columbia court, indefinitely suspended rather than disbarred Gittens. In contrast to *Gittens,* Bereano has presented no evidence that the cause of his fraudulent misconduct was an addiction to alcohol or drugs. Moreover, if this Court were similarly to defer to the District of Columbia Court of Appeals in the case before us, the sanction would be disbarment.

A loss of $600, the amount found by the federal court for guidelines purposes in sentencing Bereano, is not minimal. In *Attorney Grievance Commission v. Sperling,* 288 Md. 576, 419 A.2d 1067 (1980) (per curiam), an attorney had been convicted of attempting to obtain money by false pretenses with intent to defraud. He had attempted to obtain $100 from a bank by presenting a check drawn on his checking account after he had been notified by registered mail that the account had been closed. *Id.* at 577 n. 2, 419 A.2d at 1068 n. 2. This Court disbarred Sperling. In *Fellner v. Bar Association of Baltimore City,* 213 Md. 243, 247, 131 A.2d 729, 731–32 (1957), an attorney was disbarred for placing thirty-six "slugs" in a parking meter, instead of legitimate coins, for an apparent total loss of nine dollars.

Further, under the circumstances of this case, the federal district court's finding of a $600 loss carries little weight for mitigation purposes. In a footnote in its opinion the Fourth Circuit said:

"After inquiries were made by a legislator concerning one of Bereano's contributions, many of [Bereano's bookkeep-

er's] notes designating which clients were billed for which contributions were destroyed for some fear of discovery. The few notes that survived became the basis for these mail fraud allegations.... [T]he destruction of the notes ... made the specifics of who was overbilled on which occasions most difficult to prove beyond a reasonable doubt.... [O]nly two check stubs clearly showed that clients were billed for political reimbursements and those two stubs totaled only $600."

At oral argument in this Court, Bereano represented that the evidence was destroyed by his employee acting on her own initiative and without his knowledge. Nevertheless, the destruction of evidence greatly weakens the argument that the total loss was $600.

Bereano's attempt to describe the loss in this case as "$0.00," and to re-characterize a conviction for fraud as a "breach of contract" does not avail. The "refusal to acknowledge [the] wrongful nature of [one's] conduct" is an aggravating circumstance under Standard 9.22(g) of the American Bar Association, Standards for Imposing Lawyer Sanctions (1991 ed.). Indeed, the following exchange at oral argument in this Court, where Bereano represented himself, indicates his apparent inability fully to acknowledge his wrongdoing:

"Bereano: What makes [my conviction] atypical is that there were no victims. You had the four people [whom] allegedly I defrauded [testifying that they were not defrauded], and then I was convicted of defrauding [them], and I accept that.

"The Court: And you did [defraud them], didn't you?

"Bereano: I accept the fact that I was convicted of defrauding them.

"The Court: You accept the fact that you defrauded them?

"Bereano: Respectfully, I do not. And I'm not trying to be disrespectful to this Court—

"The Court: [Then h]ow in the world were you convicted?

"Bereano: I was convicted by a jury. 'Defrauding,' your Honor, means with the intent to cheat or do harm to somebody, and I did not have any intent to do any harm—

"The Court: What did you intend to do?

"Bereano: Your Honor—

"The Court: You must have given some thought to this scheme, so you had to have [had] an intention of some sort.

"Bereano: Respectfully, I'm not trying to be argumentative with the Court. I was convicted of a scheme, and I accept that.

"The Court: What did you intend to do by this scheme?

"Bereano: There was no scheme, your Honor. I accept that I was convicted."

■ Bereano's assertion that there was no scheme, and that he accepts his conviction, which is of "knowingly and willfully devis[ing] and intend[ing] to devise a scheme and artifice to defraud" his lobbying clients of money by false pretenses, is self-contradictory and indicates that he has not truly accepted the meaning of his conviction. Moreover, "we cannot accept as 'compelling extenuating circumstances' those proffers by the respondent which in essence call upon us to assess the integrity of the criminal conviction itself." *Bar Ass'n of Baltimore City v. Siegel*, 275 Md. 521, 527, 340 A.2d 710, 713 (1975).

Bereano also claims mitigation on the ground that "the misconduct involved lobbying, not legal clients, and therefore was not directly related to the practice of law." In *Attorney Grievance Commission v. Silk*, 279 Md. 345, 369 A.2d 70 (1977) (per curiam), this Court decided the appropriate sanction for an attorney who had misappropriated funds while treasurer of the father's club of a high school. Silk was "a lawyer who ha[d] misappropriated funds which ha[d] come into his hands in a fiduciary but not professional capacity, as distinguished from a lawyer who, in his professional capacity, ha[d] misappropriated the funds of a client." *Id.* at 347, 369 A.2d at 71. Nevertheless, this Court disbarred Silk because

"there appears to be no sound reason for regarding misappropriations committed in a non-professional capacity more leniently than those committed in a professional capacity. Each involves a breach of trust or of a fiduciary relationship and bear[s] equally on the fitness of a lawyer to practice his profession."

*Id.* at 348, 369 A.2d at 71. *See also Attorney Grievance Comm'n v. Shaw,* 354 Md. 636, 653–54, 732 A.2d 876, 885 (1999) (citing numerous cases for the proposition that "conduct by an attorney arising in the attorney's other, non-professional pursuits is also a proper subject of disciplinary proceedings").

For mitigation purposes Bereano presented before Judge Lerner considerable evidence concerning his favorable professional reputation, his extensive involvement in civic activities, and his good character. The record also contains numerous testimonials in letters written by individuals who are Bereano's clients. This mitigating evidence, however, does not constitute the degree of mitigation or "compelling extenuating circumstances" that would warrant a sanction less than disbarment in a fraud case. The evidence does not " 'tend[ ] to show that the respondent's illegal act, committed in violation of a criminal statute, resulted from intensely strained circumstances....' " *Attorney Grievance Comm'n v. Breschi,* 340 Md. 590, 601, 667 A.2d 659, 665 (1995) (quoting *Siegel,* 275 Md. at 527, 340 A.2d at 713) (ellipsis in original).

Much like the circumstances here, the hearing judge in *Casalino,* 335 Md. 446, 644 A.2d 43, found that Casalino "has been a person of good character and judgment." *Id.* at 449, 644 A.2d at 44. The hearing judge found that Casalino "has maintained an outstanding reputation among members of the bar and bench as always well-prepared, fair and zealously protective of the best interests of his clients." *Id.* The hearing judge further found that Casalino's "conviction of tax evasion has not diminished the opinion that members of the community have as to his veracity and honesty." *Id.* In addition, Casalino "developed and operated a lacrosse program for the youth in his community and has assisted in obtaining college placement and financial aid for program participants."

*Id.* at 450, 644 A.2d at 45. Nevertheless, because Casalino had been convicted of willfully attempting to evade and defeat income tax for three years, he had committed "a crime infested with fraud, deceit and dishonesty ... [which] will result in automatic disbarment absent clear and convincing evidence of a compelling reason to the contrary." *Id.* at 452, 644 A.2d at 46. The findings recited above did not clearly and convincingly evidence a compelling reason not to disbar, and Casalino was disbarred.

For the foregoing reasons we hold that disbarment is the appropriate sanction.

*IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–715, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST BRUCE C. BEREANO.*