**In The Matter of R.M.W.**

**Misc. Case No. 05 MC 409.**

United States District Court,
D. Maryland,
Southern Division.

May 4, 2007.

G. Stewart Webb, Jr., Esquire, Baltimore, Maryland, Investigating Attorney.

Before MESSITTE, LEGG and DAVIS, District Judges.

### *OPINION*

MESSITTE, District Judge.

### I.

Respondent R.M.W., a former member of the Bar of this Court, who was convict-

ed of several felonies and as a result lost his bar membership, has petitioned for readmission to membership. Pursuant to Local Rule 705.4.d, the Court, upon recommendation of its Disciplinary and Admissions Committee, appointed G. Stewart Webb, Jr., Esquire, a member of the Bar of the Court, to conduct an investigation of Respondent. At approximately the same time, the Court *en banc* issued its decision in this docket and in *In the Matter of S.G.P.,* Case No. 06–MC–116, overruling *In the Matter of G.L.S.,* 586 F.Supp. 375 (D.Md.1984), establishing new criteria for the evaluation of applications and reapplications for membership in our Bar by individuals convicted of felonies. *See* 428 F.Supp.2d 389 (D.Md.2006).

Mr. Webb prepared a Report and Recommendation in connection with the Petition, which was followed by a hearing held before a Three–Judge Panel consisting of Judge Peter J. Messitte (Chair), Chief Judge Benson E. Legg, and Judge Andre M. Davis.

Having considered Respondent's Petition, the Panel, on behalf of the Full Bench of the Court, GRANTS the Petition for Reinstatement.

## II.

Local Rule 705.4(c) of the Court provides that a petitioner for membership in the Court's bar who has been disbarred or suspended, "shall have the burden of demonstrating by clear and convincing evidence that he has the moral qualifications, competency and learning in the law required for admission to practice law before this Court and that his resumption of the practice of law will not be detrimental to the integrity and standing of the Bar or to the administration of justice, or subversive of the public interest." In evaluating these petitions, as set out in its decision of April 21, 2006 in this docket, the Court considers:

1. The nature and character of the offense or offenses committed;

2. The number and duration of offenses and the sentence as to each;

3. The period of any probation or supervised release term and whether the petitioner's adjustment to same was satisfactory;

4. The age and maturity of the applicant when the offenses were committed;

5. The grant or denial of a pardon for any offenses committed;

6. Whether the petitioner was disbarred by any other court;

7. The number of years that have elapsed since the last offense was committed, and the presence or absence of misconduct during that period;

8. Whether the petitioner has complied in all respects with the terms and conditions of prior disciplinary or remedial orders, including the payment of any costs ordered by the disbarring court;

9. Whether the petitioner has engaged or attempted or offered to engage in the unauthorized practice of law;

10. With regard to any incapacity or infirmity (including alcohol or drug abuse), whether it has ceased to exist and is not reasonably likely to recur in the future;

11. Whether the petitioner recognizes the wrongfulness and seriousness of the professional misconduct for which discipline was imposed;

12. Whether the petitioner currently has the requisite honesty and integrity to practice law;

13. The opinions of character witnesses about the applicant's moral fitness;

14. Whether the petitioner has kept informed about recent developments in the law and is competent to practice law;

15. Any other re-admissions to the bar since the petitioner's disbarment;

16. Any other matter that the petitioner may deem relevant to the application or that may be specifically requested by the Court.

## III.

Respondent, age 57, holds a Bachelor of Science degree in chemistry from Duke University and a law degree from George Washington University Law School. He was admitted to the Maryland Bar in June 1975 and immediately began to practice law in his home town, Frederick, Maryland.

Having used marijuana and other drugs as early as his high school days, by the late 1970's Respondent had become addicted to cocaine and alcohol. In his law practice, much of which involved representation of clients charged with drinking and driving offenses and family matters, he was often paid in cash which he intentionally failed to report as income. This unreported income was used to purchase cocaine for his own consumption such that, during the period of time before his arrest, he was spending between $30,000 and $40,000 a year on his drug habit.

In September 1982, a search warrant was executed on Respondent's residence, which ultimately led to felony convictions and his disbarment from membership in our Court.

Additional background history will be recited in connection with the Court's discussion of each of the factors bearing upon the request for reinstatement.

## IV.

A. *The nature and character of the offense or offenses committed;*

B. *The number and duration of offenses and the sentence as to each; and*

C. *The period of any probation or supervised release term and whether the petitioner's adjustment to same was satisfactory.*

Following his indictment in February 1983 by a State Grand Jury sitting in Anne Arundel County, Respondent pled not guilty and, after a 7 day jury trial, was convicted of one count of conspiracy to violate the Maryland Income Tax Laws and three counts of unlawfully and willfully filing false and fraudulent state tax returns for the years 1979 and 1980. On September 14, 1983, Judge Raymond Thieme of the Anne Arundel County Circuit Court sentenced Respondent to 5 years of imprisonment, with all but one year suspended on the conspiracy count, and one year on each of the false tax return counts, all to run concurrently with the sentence on the conspiracy count. In addition, Judge Thieme imposed a fine in the amount of 50% of all taxes due, as set forth in the Indictment. On appeal, the conviction and sentence were affirmed by the Maryland Court of Appeals. *[R.M.W.] v. State,* 301 Md. 214, 482 A.2d 886 (1984).

Federal charges were placed soon after the state indictment. Then, on October 31, 1983, following a three-day bench trial before Judge Norman Ramsey of this Court, Respondent was found guilty of one count of distribution of cocaine, two counts of possession with intent to distribution of cocaine, and one count of possession of cocaine. He was sentenced to two years of imprisonment on the distribution count and one year each on the possession with

intent to distribute and possession counts, with the terms to run concurrently with the term imposed on the distribution count. Respondent was given a special parole term of three years. Although the Panel has not been provided with any written opinion, Respondent reports that the conviction and sentence were upheld by the U.S. Court of Appeals for the Fourth Circuit.

Respondent served his federal sentence first, commencing on December 10, 1984 at Allenwood Prison Camp in Pennsylvania. Thereafter, by Order dated July 12, 1985, pursuant to a Motion for Reduction of Sentence, Judge Ramsey reduced Respondent's federal prison term to one year and one day. Respondent remained at Allenwood until August 25, 1985, when he was released to the State of Maryland to serve his state sentence. However, as a result of a motion Respondent filed with Judge Thieme of the Anne Arundel Circuit Court, his state sentence was modified to run concurrently with the federal sentence, as a result of which Respondent was allowed to serve the remainder of his state sentence in the Frederick County Detention Center on a live in/work out basis. Respondent served an additional thirty-one days of confinement in the Frederick County facility to complete his state time and was released from State custody on September 25, 1985.

By all accounts, Respondent complied in full with the conditions of both the special parole condition of his federal sentence and his state probation and was discharged from those terms after completing same. Indeed, in written statements submitted in connection with Respondent's proceedings for reinstatement to the Maryland Bar, his state probation agent described him as "cooperative in every way" and his U.S.

Probation Officer characterized him as "a remarkable probationer" ... "much more motivated than the usual person that she sees." The U.S. Probation Officer testified, among other things, that during his federal probation, Respondent was traveling 50 miles just to attend a Narcotics Anonymous meeting a couple of times a week.

### D. *The age and maturity of the applicant when the offenses were committed.*

The criminal acts of which Respondent was convicted occurred between 1979 and 1982, when Respondent was between 30 and 33 years of age.

At that time, he was a relatively new attorney in the process of building a criminal law practice based largely on volume. Respondent testified that he was working between 80 and 100 hours per week; indeed his ability to do so, he says, was due to in part because of his cocaine use.

The distribution count of which Respondent was convicted apparently involved giving his girlfriend a Christmas present of a rock of cocaine; there was no other evidence suggesting that Respondent was otherwise trafficking in the substance.

Respondent's drug use, while serious, had not yet risen to the level of seriousness that it attained under the Federal Sentencing Guidelines.[1] On the other hand, the income tax evasion and failure to file income tax returns then and now involved dishonesty and deception that had to be sharply apparent, especially to someone schooled in the law, whatever his age. Indeed, as will be discussed presently, it was precisely that consideration that led the Review Board of the Maryland Attorney Grievance Commission to deny Respondent's Petition for Reinstatement to

---

1. The Federal Sentencing Guidelines did not come into effect until November 1, 1987, well

after Respondent's sentences in the present case.

the Maryland State Bar in 1999 (although he was eventually granted reinstatement by the Court of Appeals in connection with that Petition).

### E. The grant or denial of a pardon for any offenses committed.

Respondent has never applied for a pardon. In fact he told both the Court Investigator and this Panel that he does not intend to do so because he admits that he is guilty of the offenses of which he was convicted and is not entitled to a pardon. He is emphatic that, as part of his recovery, he needs to accept responsibility for what he has done and that a pardon application would be inconsistent with that acceptance.

### F. Whether petitioner was disbarred by any other court.

Respondent was suspended from the practice of law by the Maryland Court of Appeals in April 1985 and disbarred on June 4, 1987. The disbarment decision is recorded in *Attorney Grievance Commission v. [R.M.W.]*, 309 Md. 658, 526 A.2d 55 (1987). The Court of Appeals declined to find that Respondent's addiction to alcohol or drugs in any way mitigated the sanction it was imposing, and agreed with the conclusion of the trial judge that it was difficult to reconcile Respondent's ability to "competently function as an attorney, while addicted to cocaine, and at the same time find that his addiction and personality disorder caused his criminal activity." 309 Md. at 665, 526 A.2d at 58.

The records of the United States District Court for the District of Maryland show that Respondent was disbarred by this Court on July 10, 1984. There is no indication that any opinion was filed in connection with that disbarment.

### G. The number of years that have elapsed since the last offense was committed, and the presence or absence of misconduct during that period.

It has now been some 24 years since Respondent last used cocaine and 14 years since he has consumed alcohol. It has been over 19 years since he was disbarred by the State of Maryland and over 7 years since his reinstatement to the Maryland Bar.

In connection with Respondent's application for re-admission to the Maryland Bar, as of early 2000, the investigator for the Maryland Attorney Grievance Commission found no evidence of any misconduct on Respondent's part nor did any of the Review Panels of the Maryland Attorney Grievance Commission find any such conduct.

The Court's investigator in the present proceeding, Mr. Webb, discussed the matter of Respondent's conduct with the Director and Deputy Director of the Maryland Lawyers Assistance Program, which has significant experience in dealing with attorneys who are currently or who in the past have been substance abusers. Richard Vincent, Director of the program, explained to the Panel that the recovery process for a substance abuser never ends and that the individual needs to remain continuously involved with Alcoholics Anonymous and its group meetings, which provide support to the individual. Mr. Vincent stated that while he had greater contact with Respondent in the early years of Respondent's steps toward recovery, he has still had continuing contact with Respondent and over the years has used him as a volunteer assisting other lawyers with substance abuse problems. Mr. Vincent states his absolute conviction that Respondent understands and fully accepts the recovery process.

Carol Waldhauser, Deputy Director of the Lawyers Assistance Program, who is responsible for monitoring participants, has had more frequent contact with Respondent in recent years, and states that in her opinion Respondent takes the AA's twelve-step recovery program "seriously." Ms. Waldhauser's feedback from lawyers who have been mentored by Respondent is that he has been "excellent." She indicated that she cannot "over-emphasize" the value of Respondent's contribution to the Lawyers Assistance Program.

H. *Whether the petitioner has complied in all respects with the terms and conditions of prior disciplinary or remedial orders, including the payment of any costs ordered by the disbarring court.*

Respondent served his prison time and satisfied in full the conditions of parole and probation terms, including the payment of all taxes and court costs due.

I. *Whether the petitioner has engaged or attempted or offered to engage in the unauthorized practice of law.*

The Court notes that since February 3, 2000, when he was formally readmitted to the Maryland Bar, Respondent has been authorized to practice law in this State and has in fact done so.

Prior to his re-admission to the Maryland Bar and following his release from confinement, Respondent worked with various of his family's businesses in the Frederick area, which primarily owned rental properties. These businesses included Peoples Home Furnitures, Inc., Security Acceptance Corporation, and R & R Realty, all located in Brunswick, Frederick County. Respondent indicates that in that connection he drew some leases and appeared on behalf of the businesses in state district court, apparently in connection with collection cases. Although under the Local Rules of this Court, a corporation may only appear in this Court through counsel, *see* Local Rule 101.1, and although the same requirement now generally obtains in state court proceedings, *see* Maryland Rule 2–131(a) (Circuit Court) and 3–131(a) (District Court), a corporation in Maryland is permitted to appear through an officer in state district court in cases involving up to the maximum jurisdictional amount ($5,000), without the need of being represented by an attorney admitted to practice. *See* Maryland Business Occupations and Professions Article, § 10–206(b)(4); and Maryland Courts and Judicial Proceedings Article, § 4–405. Respondent could not recall ever violating this dollar limit and, accordingly, the Court concludes that his appearances in the state courts during the period of his disbarment did not violate Maryland law.

In addition to the foregoing, prior to his re-admission to the Maryland Bar, Respondent served as a paralegal for individual attorneys as well as for the Public Defender in the Frederick County area.

J. *With regard to any incapacity or infirmity (including alcohol or drug abuse), whether it has ceased to exist and is not reasonably likely to recur in the future.*

Every indication is that Respondent's use of cocaine and alcohol belong to his distant past.

Immediately following his release from prison, he participated in both Narcotics and Alcoholics Anonymous and was in an outpatient substance abuse program at the Frederick Counseling Center in Frederick. This program lasted 10 months and Respondent was considered to have completed it successfully.

Since then, Respondent has been a regular participant in Alcoholics Anonymous. His sponsor indicates that Respondent has "made a conscientious, good faith, honest effort to reform." Although Respondent concedes that his attendance may be less frequent today than in the past and although he does not currently have a designated sponsor, the Court's Investigator Mr. Webb stated his belief, based on his interviews, that Respondent remains sincerely committed to his recovery and the AA's twelve-step program.

Respondent was evaluated by three psychiatrists in connection with the Maryland disbarment and reinstatement proceedings. In the disbarment proceedings, Respondent urged that he was so mentally impaired or addicted to cocaine that his impairment or addiction was "to a substantial degree" responsible for the conduct underlying his criminal convictions. *See Attorney Grievance Commission v. [R.M.W.], supra,* 309 Md. at 663, 526 A.2d 55. There was, of course, psychiatric testimony to the contrary, *i.e.* to the effect that while Respondent might have had a history of cocaine abuse and a narcissistic personality disorder, he nonetheless had no substantial degree of mental impairment and drug addiction and/or personality disorder were not responsible for his criminal activity. This was the finding that the trial judge and ultimately the Maryland Court of Appeals reached as a predicate to his disbarment from the State Bar.

In connection with his subsequent state bar reinstatement proceedings, Dr. Jonas R. Rappaport indicated that, in his view, "within reasonable medical certainty, ... [Respondent] has been rehabilitated from his addictive illness and should be emotionally able to once again conduct himself as a stable and responsible member of the Bar."

As for whether Respondent's use for cocaine or alcohol is "not reasonably likely to recur in the future," the best indication of that would seem to be that, from the time of his reinstatement in the Maryland State Bar some 7 years ago until today, Respondent has remained continuously abstinent. He indicated to Mr. Webb, and repeated to this Panel, that he no longer felt the compulsion to drink or do drugs and that he understood his need to constantly rely on the support systems of Narcotics and Alcoholics Anonymous and other programs for ex-drug addicts or alcoholics.

K. *Whether the petitioner recognizes the wrongfulness and seriousness of the professional misconduct for which discipline was imposed.*

Respondent has stated many times over that he recognized the wrongfulness and seriousness of his prior misconduct and that he is appropriately remorseful about it.

Beyond his own declarations, it is clear that Respondent has worked actively and extensively with Maryland's Lawyers Assistance Program and other impaired lawyers, helping them come to terms with their problems. Indeed Respondent has been described as "a role model" in this respect.

Respondent's refusal to pursue the possibility of a pardon, because of his professed need to accept responsibility for his actions, is another indication that he recognizes the wrongfulness and seriousness of his misconduct.

L. *Whether the petitioner currently has the requisite honesty and integrity to practice law; and*

M. *The opinions of character witnesses about the applicant's moral fitness.*

The opinions of the Director and Deputy Director of the Maryland Lawyers Assis-

tance Program have already been discussed. Mr. Webb also interviewed two Judges of the Circuit Court for Frederick County and two Judges of the District Court for Frederick County, as well as William L. Haugh, Jr., Esquire, with whom Respondent is now practicing law in Frederick. Mr. Webb reports that uniformly the Judges he interviewed had extremely high regard for Respondent, his professionalism, his stability, his knowledge of the law and his preparation. None of the Judges could recall a single instance of Respondent missing a deadline and all remarked on the thoroughness of his preparation and his skill as an advocate.

The Judges noted that Respondent has served as a mediator, particularly in family law matters and that he has represented children in domestic or family cases. One Judge characterized Respondent's service in these roles as "wonderful." Another described him as "one of the finest lawyers" to appear before him and a third called him "one of the best trial lawyers in Frederick." According to Mr. Webb, several Judges indicated that they thought Respondent was a better lawyer today than when he was disbarred. One Judge described Respondent as "a poster child" for rehabilitation. All the Judges enthusiastically support Respondent's current petition for reinstatement.

Mr. Haugh, with whom Respondent began working as a legal assistant and paralegal in 1997 and with whom he formed a partnership in 2005, attested to Respondent's competency both as a litigator and a mediator, as well as his work with other impaired lawyers and his continued participation in Alcoholics Anonymous.

Mr. Haugh, a former President of the Frederick County Bar, is in a mentor relationship with Respondent, and continuously consults with him about matters pertaining to their practice.

N. *Whether the petitioner has kept informed about recent developments in the law and is competent to practice law.*

Respondent has been practicing law, primarily in the courts of Frederick County, for more than 7 years since his reinstatement to the Maryland Bar. The comments of the Judges of that Court relative to his competency have already been related.

Over that period, Respondent has attended numerous continuing education seminars, performed volunteer work in the Office of Public Defender, and served as a mediator, primarily in family law and personal injury cases. Petitioner has received numerous certificates of qualification in mediation matters from the Frederick County Bar.[2]

O. *Any other re-admissions to the bar since the petitioner's disbarment.*

Respondent was reinstated to the Maryland Bar by Order dated January 7, 2000 signed by Chief Judge Bell for the Maryland Court of Appeals, "with a majority of the Court concurring." He was returned to the Registry of Attorneys on February 3, 2000. Since that time he has satisfied the conditions set forth in that Order in every respect.

Nonetheless, the Panel is aware that, in connection with his Petition for Reinstatement to the State Bar, although the Inquiry Panel recommended Respondent's reinstatement, the Board of Review disagreed and recommended that his Petition be denied. The Board "agreed with the Inquiry

---

2. Although Respondent has been the subject of a certain number of complaints from clients since his re-admission to the Maryland

Bar, Mr. Webb reviewed the complaints and found them lacking in merit. The Court has reviewed his analysis and agrees.

Panel that [Respondent's] efforts at rehabilitation for substance abuse were admirable and that his community and civic services were impressive and that his legal continuing education and earnest desire to practice law were compelling," but noted that "his income tax evasion and failure to file were troublesome." The Board went on to say that "some members felt that that aspect alone deemed him unworthy to be reinstated as a member of the Bar." Accordingly, the Board voted to deny the Petition.

Notably, Bar Counsel disagreed with the Board of Review and asked the Court of Appeals to grant the Petition for Reinstatement, which it did, albeit only "with a majority of the Court concurring."

Since that time, Respondent has practiced law without incident, allowing for a few individual grievances that have been filed against him, none of which in the Court's view appear to have been meritorious.

P. *Any other matter that the petitioner may deem relevant to the application or that may be specifically requested by the Court.*

In view of the specific reservations that members of the Review Board expressed in connection with the Petitioner's application for reinstatement to the Maryland Bar, the Court asked Mr. Webb to review authorities from other jurisdictions to determine the extent to which reinstatement to bar membership after a felony conviction—particularly one involving dishonesty

such as tax fraud—has been granted or denied.

Together with Christopher R. Mellott, Esquire, his partner in the law firm of Venable LLP and the Court-appointed investigator in the companion case decided today, *In the Matter of S.G.P.,* Case No. 06–MC–116, Mr. Webb has done so. In a thorough and lucid memorandum, they conclude that:

> A small minority of States enforce rules making some convicted felons ineligible for admission to the bar. A small minority of States enforce "permanent disbarment" provisions, largely in cases involving an attorney's intentional misappropriation or theft of client funds. However, most jurisdictions do *not* categorize any criminal offices or misconduct as being so heinous that they will preclude the possibility of admission or reinstatement.[3]

This Court believes that dishonesty involved in evading income taxes and in not filing tax returns has always been a serious matter. Drug activity today has become a matter of prime concern in the criminal justice system. Indeed, were Respondent's cases to have come before a federal court in 2007, it is clear that the punishment to be imposed would be considerably more severe than that which was imposed by the state and federal judges in the mid–1980's.

But whatever the courts of some jurisdictions may believe about the permanent disqualification to serve as an attorney of an individual who has been convicted of a crime of dishonesty, this Court, joining the

---

**3.** Ordinarily the Court would cite to limited portions of a memorandum such as this to illustrate the precise point or points set forth in the text of its opinion. However, the unanimous feeling of the Panel is that the Webb–Mellott memorandum is extraordinarily thorough in its exposition of a very important

issue not well illuminated by the case law which would almost certainly prove useful to other courts facing the issue. Accordingly, Mr. Webb and Mr. Mellott's Memorandum is set forth in full as Attachment A to this Opinion.

majority of courts, takes a different view. The Court believes that, when sufficient time has passed since the criminal activity, when there is manifest indication of the individual's rehabilitation and remorse as well as his skill to serve as an attorney, when all that is presented to the Court in a clear and convincing matter, there is still room for someone to rejoin (or indeed to join in the first instance) the ranks of the Bar of this Court.

Accordingly, the Court concludes that Respondent's rehabilitation is genuine and that he does indeed represent a benchmark for attorneys similarly situated who would seek reinstatement in our Bar.

For these reasons, on behalf of the Full Bench of the Court, the Panel GRANTS Respondent's Petition for Reinstatement. A separate Order will be ENTERED.

### ORDER

For the reasons set forth in the accompanying Opinion, it is this 1 st day of May, 2007 **ORDERED**:

1) The Petition for Reinstatement of R.M.W. to the Bar of this Court is **GRANTED**;

2) R.M.W. shall be immediately **RESTORED** to the Register of Attorneys of this Court.

### ATTACHMENT A

January 31, 2007

### CONFIDENTIAL

The Honorable Peter J. Messitte
United States District Court
  For the District of Maryland
United States Courthouse
6500 Cherrywood Lane
Greenbelt, Maryland 20770

The Honorable Benson Everett Legg
United States District Court
  For the District of Maryland

United States Courthouse
101 West Lombard Street
Baltimore, Maryland 21201

The Honorable Andre M. Davis
United States District Court
  For the District of Maryland
United States Courthouse
101 West Lombard Street
Baltimore, Maryland 21201

Re: **In the Matter of R.M.W., *Case No. 05–mc–409***
**In the Matter of S.G.P., *Case No. 06–MC–116***

Your Honors:

As a supplement to our letter of January 24 and in response to the panel's request for additional legal research on whether the courts have recognized any criminal offenses or misconduct as so heinous as to preclude reinstatement, enclosed is a memorandum addressing the same.

We again have provided the results of our research in the form of a bench memorandum rather than a formal filing in the underlying proceedings and have not provided a copy of our memorandum to the two petitioners. We elected to proceed in the more informal manner because we are not addressing the facts or circumstances of either petitioner's case but, instead, simply providing the panel with legal research. If the panel would prefer that we file a formal memorandum in the proceedings and serve copies on the petitioners, we will, of course, do so.

Very truly yours,

G. Stewart Webb, Jr.

Christopher R. Mellott

CRM/sd
Enclosure
BA2DOCS1*310529

### MEMORANDUM

TO:   The Honorable Peter J. Messitte
      The Honorable Benson Everett Legg
      The Honorable Andre M. Davis

FROM: G. Stewart Webb, Jr.
      Christopher R. Mellott
      Alex Hortis

RE:   Heinous Offenses or Misconduct Pre-
      cluding Admissions or Reinstatement

DATE: January 31, 2007

## I.  INTRODUCTION

The memorandum addresses the issue of whether courts have recognized any criminal offenses or misconduct so heinous as to preclude admission or reinstatement. A small minority of States enforce rules making some convicted felons ineligible for admission to the bar. A small minority of States enforce "permanent disbarment" provisions, largely in cases involving an attorney's intentional misappropriation or theft of client funds. However, most jurisdictions do *not* categorize any criminal offenses or misconduct as being so heinous that they will preclude the possibility of admission or reinstatement. The analysis focuses on Maryland law in the first instance, and then surveys the caselaw of other jurisdictions.[1]

## II.  ANALYSIS

### A.  Maryland Law

The Court of Appeals of Maryland has *not* created any *per se* categories of offenses or misconduct for which admission or reinstatement is impossible. The Court of Appeals of Maryland has held that there is *"no litmus test"* for initial admission, and no offense or misconduct which automatically disqualifies an applicant. *See Application of Allan S.*, 282 Md. 683, 689, 387 A.2d 271, 275 (Md.1978) (holding a "prior conviction is not conclusive of a lack of present good moral character") (emphasis added).

Similarly, with regard to reinstatement, the Court of Appeals has explained that there "may be a point in time when it is proper to reinstate to the practice of law even one who has committed a most heinous crime." *In the Matter of the Reinstatement of Murray*, 316 Md. 303, 304–05, 558 A.2d 710, 710 (Md.1989) (quoting *In re Raimondi and Dippel*, 285 Md. 607, 403 A.2d 1234 (Md.1979)). Accordingly, the Court of Appeals has held that Maryland law does *not* provide for "permanent disbarment" explaining: "In Maryland, an indefinite suspension, by its very terms, is *not a permanent status, nor is disbarment.* Some of our sister jurisdictions provide for permanent disbarment." *Attorney Grievance Comm'n of Md. v.*

---

1.  Most published caselaw on heinous offenses or misconduct involves petitions for reinstatement, rather than initial admissions. Relatively few new applicants to the bar have committed serious felonies. *See* Deborah L. Rhode, *Moral Character as a Professional Credential*, 94 YALE L.J. 491, 505 (1985) ("Screening law school graduates, whose median age is about twenty-seven is in many respects premature .... As examiners frequently noted, candidates are generally too young to have made a record for themselves."). Second, most initial applicants who receive adverse recommendations by the admission committee in the confidential screening process withdraw their application rather than pursue it further in court. *See* Supreme Court of Ohio, *Statistics Regarding Character and Fitness Determinations* (2007) (showing that in Ohio in 2005 of the 15 new applicants who received adverse admissions committee recommendations only 3 resulted in decisions by the Supreme Court of Ohio) (*available at http://www.sconet.state.oh.us/Admissions/cfstats/default.asp* ). By contrast, attorney disbarments are public, and reinstatement decisions generally require court opinions.

*Brooke,* 374 Md. 155, 181, 821 A.2d 414, 429 (Md.2003) (emphasis added). In other words, Maryland is *not* "one of the handful of states that does not permit, under any circumstances, the reinstatement of lawyers who have been disbarred." *See* N.J. State Bar Ass'n, *Report and Recommendations–Reinstatement of Disbarred Lawyers,* at 1 (Mar. 23, 2001).[2]

In theory, under Maryland law, any new applicant or disbarred attorney may petition for admission or reinstatement if the attorney shows through "clear and convincing" evidence that admission or reinstatement is warranted. *See In re Braverman,* 271 Md. 196, 209, 316 A.2d 246, 253 (Md.1974) (noting it is "always possible that a disbarred lawyer could be reinstated" and holding that "disbarment does not operate as a permanent disability" under Maryland law). In reality, however, few disbarred attorneys petition for reinstatement. In Maryland, between 1990 and 1999, 50 disbarred lawyers petitioned for reinstatement, and 25 of these applications were granted. *See* N.J. State Bar Ass'n, *Reinstatement of Disbarred Lawyers,* at 2. Nationwide, in 1997, only 25 petitions for reinstatement were granted. *See id.*

In considering reinstatement, the Court of Appeals considers the *Braverman* factors:

1. The nature and circumstances of the petitioner's original misconduct;

2. The petitioner's subsequent conduct and reformation;

3. The petitioner's present character; and

4. The petitioner's present qualifications and competence to practice law.

*See Braverman,* 271 Md. at 197, 316 A.2d at 247. The Court of Appeals has further held that the "more serious the original misconduct was, the heavier the burden to prove present fitness for readmission to the bar." *Murray,* 316 Md. at 304, 558 A.2d at 711.

The following subsections summarize some of the leading cases on initial admissions or reinstatements organized by the category of the petitioner's original misconduct. As shown below, the Court of Appeals has admitted or reinstated disbarred attorneys after a wide variety of offenses. In short, in Maryland, there is no "ultimate offense" from which an applicant or a disbarred attorney may never recover.

### 1. *Intentional Misappropriation of Client Funds*

The Court of Appeals considers the misappropriation of client funds by an attorney to be the most egregious professional offense. *See Attorney Grievance Comm'n of Md. v. Bernstein,* 363 Md. 208, 227, 768 A.2d 607, 617 (Md.2001) (citation omitted) ("[M]isappropriation by an attorney of funds of others entrusted to his care, be the amount small or large, is of great concern and represents the gravest form of professional misconduct."). The attorney does *not* have to be criminally convicted to be disbarred for misappropriating client funds. *See In re Barton,* 273 Md. 377, 380, 329 A.2d 102, 105 (Md.1974) ("This Court has clearly stated that misappropriation of a client's funds, even if no criminal conviction results, must be considered to be an offense of the utmost gravity.").

Nonetheless, even attorneys disbarred for misappropriating client funds can and have been reinstated by the Court of Appeals. As the Court of Appeals has explained: "[R]ehabilitation may occur, even after the grave offense of stealing from

---

2. *Available at http://w ww.njbsa.com/activi-* ties/index.cfm?fuscaction=reinstatement.

clients." *Murray*, 316 Md. at 310–11, 558 A.2d at 713 (granting petition for reinstatement of attorney who pled guilty in 1977 to misappropriating funds from client's estate) (citing *Matter of Barton*, 291 Md. 61, 67, 432 A.2d 1335, 1338 (Md. 1981) (granting petition for reinstatement of attorney disbarred in 1966 for misappropriating small amounts of funds from four clients during period of alcohol abuse)).

### 2. *Conviction for Fraud or Racketeering*

Applicants with recent convictions for offenses involving fraud have been denied initial admission to the bar. *See In re Application of K.B.*, 291 Md. 170, 171, 434 A.2d 541, 542 (1981) (denying admission where applicant had recently pled guilty to credit card fraud); *cf. In re Brown*, 392 Md. 44, 45, 895 A.2d 1050, 1051 (Md.2006) (denying initial admission to an applicant who had been convicted of bank fraud in 1991 and who had also misrepresented his criminal history to the Court of Appeals).

Similarly, when an attorney is found by the bar to have engaged in "intentionally dishonest conduct ... disbarment is the usual sanction." *Attorney Grievance Comm'n of Md. v. Kinnane*, 390 Md. 324, 339, 888 A.2d 1178, 1187–88 (Md.2005). In particular, disbarment "is the usual sanction for an attorney convicted of a crime of which a necessary element is fraud." *Attorney Grievance Comm'n of Md. v. Bereano*, 357 Md. 321, 330, 744 A.2d 35, 40–43 (Md.2000) (collecting cases).

Nonetheless, an attorney disbarred following his conviction of federal mail fraud and racketeering has been reinstated. *See Matter of Reinstatement of Cory*, 300 Md. 177, 186, 477 A.2d 273, 278 (Md.1984) (granting petition for reinstatement of attorney convicted in 1977 of federal mail fraud and racketeering charges involving Governor Mandel).

### 3. *Conviction for Bribery*

An attorney who was disbarred for federal bribery convictions was also reinstated. *See Matter of Reinstatement of Wyatt*, 342 Md. 117, 117, 673 A.2d 1356, 1356 (Md.1996) (granting petition for reinstatement of attorney convicted of bribing an Assistant Attorney General) (citing *Attorney Grievance Comm'n of Md. v. Wyatt*, 293 Md. 324, 324, 443 A.2d 965, 965 (Md.1982) (disbarring attorney convicted of bribery)).

### 4. *Conviction for Conspiracy to Advocate Overthrowing the Government*

In the leading Maryland case on attorney reinstatements, the Court of Appeals reinstated an attorney convicted of "conspiracy to teach and advocate the overthrow of the government by force or violence" in violation of federal law. *See In re Braverman*, 269 Md. 661, 666, 309 A.2d 468, 471 (Md.1973) (granting petition for reinstatement of attorney convicted of violating the federal Smith Act in 1952).

### 5. *Conviction for Violent Crimes*

The Court of Appeals has admitted applicants who had been convicted of violent crimes in the past. In *In re G.L.S.*, 292 Md. 378, 439 A.2d 1107 (Md.1982), the Court of Appeals admitted an applicant who 14 years earlier had driven the getaway car as part of an armed robbery of a bank. *See In re G.L.S.*, 292 Md. at 378, 439 A.2d at 1108 ("Because we find convincing evidence of the applicant's full and complete rehabilitation and of his present good moral character, we shall order his admission.").

In *Application of Dortch*, 344 Md. 376, 687 A.2d 245 (Md.1997), the Court of Appeals reserved deciding whether a person convicted of homicide could be eligible for initial admission to the Maryland bar. *See Dortch*, 344 Md. at 389, 687 A.2d at 251.

The Court of Appeals held that the petitioner's application was "premature" because the petitioner was still on parole for his murder convictions, and holding that the petitioner would have to be "released from parole supervision for the offense before this Court will even consider his or her application." *Dortch*, 344 Md. at 377, 687 A.2d at 245.

The concurring opinion interpreted the majority opinion as suggesting that a convicted murderer *might* potentially be admitted to the Maryland bar. *See Dortch*, 344 Md. at 389, 687 A.2d at 251 ("Today, the Court holds that because Petitioner, a convicted murderer of a police officer, is still on parole, his 'petition is therefore premature and is denied. He is free to file a new petition for admission if, and when, he is released from parole supervision' .... In so holding, the Court suggests that if Petitioner's parole were to be terminated tomorrow, he *might* be admitted.") (Raker, J., concurring) (emphasis in original). The Court of Appeals has not revisited the issue of whether a convicted murderer could be admitted or reinstated to the Maryland bar.

### 6. *Alcohol or Drug Abuse*

The Court of Appeals has reinstated disbarred attorneys with past histories of alcohol and drug abuse. *See Matter of Barton*, 291 Md. 61, 65, 432 A.2d 1335, 1337 (Md.1981) (reinstating attorney who had shown his rehabilitation "excessive alcohol abuse"). Some attorneys have been reinstated on the condition that they participate in ongoing counseling. *See, e.g., In re Reinstatement of Grier*, 356 Md. 142, 153, 737 A.2d 1076, 1082 (Md.1999) (reinstating suspended attorney conditioned on his "continued and regular participation in Alcoholics Anonymous for the indefinite future" and monitoring of his practice and escrow accounts by a member of the Maryland bar).

### B. *Other Jurisdictions*

With regard to initial admissions, Maryland follows the large majority of States which do not have *per se* offenses or misconduct which will automatically prevent admission to the bar. According to a recent American Bar Association ("ABA") survey,[3] in only three States will an applicant's felony conviction automatically render the applicant ineligible for admission (Mississippi, North Dakota, Oregon).[4] *See* Am. Bar Ass'n, *Comprehensive Guide to Bar Admission Requirements 2007*, at 6 (2007). In three other States an applicant must obtain a pardon or restoration of civil rights following a felony conviction to be eligible for admission (Alabama, Florida, Georgia).[5] *See* Am. Bar Ass'n, *Bar Admission Requirements 2007*, at 6.[6] There is very little caselaw interpreting these rules in these States.

---

**3.** *Available at http://w ww.ncbex.org/comprehensive-guide-to-bar-admissions/.*

**4.** In North Dakota, the felony must have been one which has a "direct bearing on the applicant's ability to serve the public as an attorney," and in Oregon the felony must have been one which "would have led to disbarment in all the circumstances present, had the person been an Oregon attorney at the time of the conviction." *See* Am. Bar Ass'n, *Bar Admission Requirements 2007*, at 6. Mississippi excludes only felonies for manslaughter and tax code violations; all other felonies will render the applicant ineligible for admission. *See id.*

**5.** Alabama requires a full pardon, Georgia requires either a pardon or restoration of civil rights, and Florida requires restoration of civil rights. *See id.*

**6.** Missouri and Texas have automatic five-year waiting periods following the completion of the sentence and probation. *See id.*

With regard to reinstatement, Maryland law reflects the majority rule among the States, which rejects "permanent disbarment" and permits virtually any disbarred attorney to apply for reinstatement. By contrast, there are six States which enforce provisions allowing for "permanent disbarment," meaning the State does not permit, under any circumstances, the reinstatement of a disbarred lawyer. *See* Brian K. Pinaire, et al., *Barred from the Bar: The Process, Politics, and Policy Implications of Discipline for Attorney Felony Offenders,* 13 VA. J. Soc. POL'Y & L. 290, 318 (Winter 2006). The six States include: (1) Iowa; (2) Indiana; (3) Kentucky; (4) New Jersey; (5) Ohio; and (6) Oregon.[7] These six States can be said to follow the minority rule, which allows for "permanent disbarment" and prohibits those permanently disbarred attorneys from petitioning for reinstatement.

Regarding reinstatement, the grounds for "permanent disbarment" in these six States are not clearly defined. These States usually order "permanent disbarment" for the knowing misappropriation of client funds. Otherwise, the grounds for permanent disbarment vary. The following subsections outline categories of offenses which have caused permanent disbarment. Because these States do not issue reinstatement decisions for permanent disbarments, the cited caselaw is from disbarment or indefinite suspension decisions.

### 1. *Intentional Misappropriation of Client Funds*

The leading ground for permanent disbarment in these six States is when an attorney is found by the bar to have intentionally misappropriated or stolen client funds. *See* Pinaire, *Barred from the Bar,* at 319 ("Perhaps the most striking finding from these data—and from our interviews—was the imposition of automatic disbarment for attorneys convicted of knowing misappropriation."); *see also* David Luty, *In the Matter of Mitigation: The Necessity of a Less Discretionary Standard for Sanctioning Lawyers Found Guilty of Intentionally Misappropriating Client Property,* 32 HOFSTRA L. REV. 999, 999 (Spring 2004) (describing Ohio's strong presumption of permanent disbarment in cases involving intentional misappropriation of client funds). One study of the New Jersey bar found that while 72.34% of attorneys who were convicted of felonies are permanently disbarred, felonies involving misappropriation of client funds led to permanent disbarment 99% of the time, while other felony convictions led to permanent disbarment only 42.7% of the time. *See* Pinaire, *Barred from the Bar,* at 318. The authors of this report therefore concluded that "an attorney who commits knowing misappropriation in New Jersey is finished; but with anything else, the punishment might not be that severe." *Id.*

It should be emphasized that while most of these States have created strong presumptions favoring disbarment for misappropriation of client funds, they are rebuttable presumptions which leave open the possibility of a sanction less than disbarment. *See Iowa Supreme Ct. Attorney Disciplinary Bd. v. D'Angelo,* 710 N.W.2d 226, 236 (Iowa 2006) ("A lawyer's deliberate conversion of client funds ordinarily demands revocation of the lawyer's license

---

7. Two other States—California and Florida—regularly enforce "permanent disbarments" of five years. *See* N.J. State Bar Ass'n, *Reinstatement of Disbarred Lawyers,* at 2. Accordingly, Florida is the only State which restricts initial admissions for felony convictions, and has a form of "permanent disbarment."

to practice law."); *In re Tonzola,* 162 N.J. 296, 744 A.2d 162, 167 (2000) ("When the offense ... involves misappropriation or theft of client funds, disbarment is almost invariable.") (citations and quotations omitted); *Disciplinary Counsel v. Griffith,* 112 Ohio St.3d 134, 858 N.E.2d 397, 399 (2006) ("The presumptive disciplinary measure for such acts of misappropriation is disbarment."); *In re Kimmell,* 332 Or. 480, 31 P.3d 414 (2001) ("Theft from a client is the most egregious form of theft that can be committed by a lawyer and generally warrants disbarment."); *M.Q.M. v. State,* 840 N.E.2d 441, 446 (Ind.App.2006) ("[O]utright theft of client funds generally warrants very severe sanction, up to and including disbarment.").

## 2. *Other Offenses or Misconduct*

Outside the misappropriation of client funds, there do not appear to be any consistent categories of offenses which mandate "permanent disbarment" across these six States. The offenses which have been found to warrant "permanent disbarment" vary by State, and are enforced inconsistently within the State. Nonetheless, there are some offenses which frequently result in "permanent disbarment" in these States.

### a. *Conviction for fraud or dishonesty*

Criminal convictions for offenses involving fraud or dishonesty have been cited as classic grounds for the "permanent disbarment" of attorneys, though permanent disbarment is not invariably ordered in every case. *See Ky. Bar Ass'n v. Matthews,* 131 S.W.3d 744, 745 (Ky.2004) (adopting "recommendation of permanent disbarment" for attorney's federal convictions for "seven fraud or fraud-related felonies" involving a bank); *In re Messinger,* 133 N.J. 173, 181, 627 A.2d 162 (1993) (ordering

permanent disbarment of attorney convicted of conspiracy to defraud government by engaging in fraudulent securities transactions to generate tax losses); *Committee on Professional Ethics & Conduct of the Iowa State Bar Ass'n v. Littlefield,* 244 N.W.2d 824, 825 (Iowa 1976) (holding attorney's misdemeanor conviction for attempting to make false financial statement to fraudulently procure credit card and violating his parole by engaging in legal practice "justify his permanent disbarment"); *but see In re Fisher,* 691 N.E.2d 1221, 1222 (Ind.1998) (holding federal convictions for money laundering and "the criminal scienter underlying them call for permanent disbarment from the practice of law" but that the mitigating factor of attorney's diminished capacity following the tragic death of this son warranted a three year suspension).

### b. *Convictions for offenses involving the legal system*

Criminal convictions for offenses involving the legal system such as bribery or perjury frequently result in "permanent disbarment," but again not invariably so. *See Ky. Bar Assn. v. Vanmeter,* 176 S.W.3d 692 (Ky.2005) (entering "an order of permanent disbarment" after attorney pled guilty to felony offenses for "Perjury, Tampering with Physical Evidence, Tampering with Public Records, and three counts of Second Degree Criminal Possession of a Forged Instrument"); *Cleveland Bar Assn. v. Jurek,* 62 Ohio St.3d 318, 581 N.E.2d 1356, 1357 (1991) (holding attorney's conviction for bribery to avoid random judicial assignments warranted permanent disbarment); *but see Disciplinary Counsel v. Blaszak,* 104 Ohio St.3d 330, 819 N.E.2d 689, 694 (2004) (holding attorney's federal conviction for selling witness testimony warranted only two-year suspension where it was an isolated incident and was mitigated by overwhelming evi-

dence of attorney's exemplary record of professional and community service).

### c. Convictions for offenses involving public corruption

While cases disciplining attorneys for public corruption are relatively rare, permanent disbarment is frequently ordered in such cases, though again not in every case. *See Matter of Goldberg*, 142 N.J. 557, 666 A.2d 529, 534 (1995) (holding criminal convictions for conspiracy to commit "bribery and official misconduct ... ordinarily result in disbarment"); *Disciplinary Counsel v. DiCarlantonio*, 68 Ohio St.3d 479, 628 N.E.2d 1355, 1356 (1994) (finding "respondent sold his [public] office and conspired to extort a $30,000 bribe" and ordering "respondent be permanently disbarred"); *but see Ohio State Bar Ass'n v. Johnson*, 96 Ohio St.3d 192, 772 N.E.2d 1184, 1187 (2002) (holding state senator's misconduct involving extortion and *quid pro quos* constituted "egregious violations of the Code of Professional Responsibility. But he may someday be able to demonstrate the ethical conduct that Ohio attorneys must practice. Because this possibility exists, we find the sanction of indefinite suspension to be appropriate.").

### d. Repeated sexual misconduct toward clients

Repeated sexual misconduct towards clients has been cited as a ground for the "permanent disbarment" of attorneys as well. *See Disciplinary Counsel v. Sturgeon*, 111 Ohio St.3d 285, 855 N.E.2d 1221 (2006) (holding attorney "must be permanently disbarred for his egregious professional misconduct" in repeatedly soliciting sex from female clients and making inappropriate comments and touches); *Florida Bar v. McHenry*, 605 So.2d 459, 461 (Fla. 1992) (holding sexual misconduct in pres-

ence of client and past disciplinary record warranted permanent disbarment).

### 3. Relevant Caselaw in the Federal Courts

The federal courts have *not* published much caselaw defining what categories of offenses may require "permanent disbarment" in their courts. The paucity of caselaw makes it difficult to identify any reliable trends in the federal courts. Nonetheless, there are a few relevant cases.

In *In re Dreier*, 258 F.2d 68 (3d Cir. 1958), the Third Circuit reversed a district court's refusal to admit an attorney to the bar for the United States District Court for the District of Pennsylvania. The attorney had been temporarily suspended from practicing law before a Pennsylvania county court based on his criminal convictions for bribery and fraudulent conversion while he was the mayor of Nanticoke, Pennsylvania. *See Dreier*, 258 F.2d at 68. The attorney had not been disciplined by the Supreme Court of Pennsylvania, and his suspension had been lifted by the Pennsylvania county court. *See id.* at 68–69. In reversing the district court's refusal to admit the attorney, the Third Circuit stated:

> Certainly an erring lawyer who has been disciplined and who having paid the penalty has given satisfactory evidence of repentance and has been rehabilitated and restored to his place at the bar by the court which knows him best ought not to have what amounts to *an order of permanent disbarment entered against him by a federal court solely on the basis of an earlier criminal record and without regard to his subsequent rehabilitation and present good character.*

*See id.* at 69–70 (emphasis added). The Third Circuit ordered the district court to reconsider the attorney's application and

"grant it unless the court finds it to be a fact that the appellant is not presently of good moral or professional character." *Id.* at 70.

In *In re Braverman*, 549 F.2d 913 (4th Cir.1976), *rev'g* 399 F.Supp. 801 (D.Md. 1975), the Fourth Circuit reversed a district court's denial of an attorney's petition for reinstatement to the bar for the United States District Court for the District of Maryland. As noted above, the Maryland attorney in *Braverman* had been disbarred for his criminal conviction under the Smith Act, but was later reinstated by the Court of Appeals of Maryland. *See* supra Point II.A.4. In reversing the district court's denial of reinstatement, the Fourth Circuit quoted the same passage from *Dreier* reproduced above, noting that the *Dreier* decision "was especially applicable to Braverman's case." *Braverman,* 549 F.2d at 921 (quoting *Dreier,* 258 F.2d at 69–70).[8]

However, in *In re Bucci*, No. 92–2341, 1993 WL 164785, at *1 (1st Cir. May 19, 1993) (unpublished per curiam), the First Circuit upheld a district court's denial of an attorney's petition for reinstatement to bar of the United States District Court for the District of Rhode Island. The attorney had been disbarred following his conviction for making false declarations in federal court and conspiracy to present false testimony in federal court. *See Bucci,* 1993 WL 164785, at *1. The attorney was reinstated by the Rhode Island Supreme Court, but was twice denied reinstatement by the federal district court, who expressed "the opinion that any lawyer who has been convicted of a crime of dishonesty should be permanently barred from practice in this Court." *See Bucci,* 1993 WL 164785, at *1. In affirming the denial, the First Circuit stated that "[p]er-

manent disbarment may be premised upon a felony conviction" and concluded that given the "nature and seriousness of [the attorney's] criminal offenses" the district court did not abuse its discretion. *See Bucci,* 1993 WL 164785, at *2. The *Bucci* decision has not been cited in any other decision.

In *In re MPM Enterprises, Inc.,* 231 B.R. 500 (E.D.N.Y.1999), an attorney had made false statements in an affidavit submitted to a bankruptcy court, and failed to file a disclosure of compensation as required under the bankruptcy rules. As a sanction, the bankruptcy court barred the attorney "from appearing before any Bankruptcy Court in the Eastern District of New York . . . ." *In re MPM,* 231 B.R. at 503. The disbarred attorney appealed the decision to the district court. *See id.* Citing the bankruptcy court's broad powers to prevent abuse of process, and a federal court's inherent powers to control admission, to the bar the district court concluded that it "is of the view that the Bankruptcy Court has the power to *permanently bar an attorney from appearing in any Bankruptcy Court in the Eastern District."* *Id.* at 504 (emphasis added). The district court, however, found this sanction was excessive on the facts of the case. *Id.* at 506.

### 4. *Proposals for Establishing Categories of Offenses Warranting Permanent Disbarment*

One reason why there are few standards for permanent disbarment is that it is "much easier to get people to agree that there should be permanent disbarment than it is to get these same people to agree on defining the parameters of conduct that justifies this sanction." Ronald A. Rotun-

---

8. It should be noted, however, that the Fourth Circuit does not demand reciprocal reinstatement simply because the Maryland Court of Appeals has reinstated a disbarred attorney. *See In re G.L.S.,* 745 F.2d 856, 859 (4th Cir. 1984), *aff'g* 586 F.Supp. 375 (D.Md.1984).

da & Mary M. Devlin, *The Case Against Permanent Disbarment*, 5 THE PROFESSIONAL LAWYER, 22 (Feb.1994). Furthermore, the ABA, the largest bar association in the United States, has long opposed permanent disbarment, thereby stunting such efforts. *See* Kimberly A. Lacey, *Second Chances: The Procedure, Principles, and Problems with Reinstatement of Attorneys After Disbarment*, 14 Geo. J. Legal Ethics 1117, 1132 (Summer 2001). The ABA's has stated that "[s]ince the purpose of lawyer discipline is not to punish, readmission may be appropriate." Am. Bar Ass'n, MODEL RULES FOR LAWYER DISCIPLINARY ENFORCEMENT, Rule 25, Commentary, at 25 (1996).[9]

Recently, however, the State Bar of California approved a proposal to establish categories of offenses and misconduct which would constitute grounds for ordering "permanent disbarment" (which California would continue to define as 5 years). *See* Nancy McCarthy, *Board OKs permanent disbarment*, THE CAL. BAR JOURNAL, at 1 (Sept.2006); *see also* Mike McKee, *Disbarred California Attorneys Face Stricter Sanctions*, 234 THE LEGAL INTELLIGENCER 4 (Aug. 24, 2006). Specifically, the State Bar Board of Governors approved a list of seven categories of offenses or misconduct which it believed should constitute grounds for permanent disbarment. The seven categories are:

1. Conviction of a crime involving malfeasance in public office which involved fraud or the embezzlement or intentional misuse of public funds;

2. Engaging in multiple instances of the intentional theft or conversion of client funds, resulting in substantial harm to one or more victims;

3. Engaging in the intentional corruption of the judicial process, including but not limited to bribery, forgery, perjury or subordination of perjury;

4. Engaging in multiple instances of insurance fraud committed in the course of the practice of law, including but not limited to staged accidents, the submission of false or fraudulent claims for the payment of a loss or injury or repeated instances of runner-based solicitation;

5. Engaging in the unauthorized practice of law when the member knew of his or her disbarment, resignation or suspension from practice;

6. The member was previously disbarred or resigned with disciplinary charges pending; and

7. Engaging in conduct, involving fraud, moral turpitude or a pattern of serious misconduct that is so egregious that the member should be permanently disbarred.

*See* State Bar of California, *Proposed New Rules 951.2 and 951.3* (2006).[10] This proposal was approved by the State Bar Board of Governors in August 2006, and is pending before the Supreme Court of California. *See* McCarthy, *Board OKs permanent disbarment*, at 1.

---

**9.** *Available at* http://www.abanet.org/cpr/disenf/rule25.html.

**10.** *Available at* http:// www.calbar.ca.gov/calbar/pdfs /public-comment/2006/Perm-Disbar-Prop-Amend.pdf.